IN RE the TERMINATION OF PARENTAL RIGHTS OF BRITTANY ANN H., a Person Under the Age of 18:

WAUKESHA COUNTY, Petitioner-Respondent-Petitioner, John J. GRAU, Guardian ad Litem, Petitioner,

v.

STEVEN H., Respondent-Appellant.

Supreme Court

*No. 98–3033. Oral argument November 4, 1999.—Decided March 24, 2000.*

2000 WI 28

(Also reported in 607 N.W.2d 607.)

344

For the petitioner-respondent-petitioner there were briefs and oral argument by *Anton S. Jamieson*, assistant corporation counsel.

For the petitioner there were briefs by *John J. Grau* and *Grau Law Office*, Waukesha and oral argument by *John J. Grau*.

For the respondent-appellant there was a brief by *Thomas K. Voss* and *Love, Voss, Murray & Goeschko*, Waukesha and oral argument by *Thomas K. Voss*.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of an unpublished decision of the court of appeals, *In re the Termination of Parental Rights of Brittany Ann H.*, No. 98–3033, unpublished slip op. (Wis. Ct. App., Feb. 24, 1999), reversing an order of the Circuit Court for Waukesha County, J. Mac Davis, Judge. The circuit court order terminated the parental rights of Steven H. to his daughter Brittany. The court of appeals reversed the termination order because some orders removing Brittany from her home did not include the written notice prescribed by Wis. Stat. § 48.356(2) (1997–98).[1] The court of appeals held that Steven H.'s trial counsel's failure to object to the deficient orders amounted to ineffective assistance of counsel.[2]

---

[1] All further references to the Wisconsin Statutes are to 1997–98 unless otherwise stated.

[2] Section 48.23(2) provides that a parent 18 years old or older who appears before the court in a proceeding involving

346

¶ 2. Two issues are presented: (1) Do Wis. Stat. §§ 48.356(2)[3] and 48.415(2)[4] require that each and

involuntary termination of parental rights shall be represented by counsel unless the parent waives counsel. The right to be represented includes the right to effective counsel. *See A.S. v. State,* 168 Wis. 2d 995, 1003–04, 485 N.W.2d 52 (1992).

Steven H. claims that trial counsel was ineffective for failing to move to strike the continuing CHIPS grounds of the petition to terminate parental rights on the ground that he did not receive the prescribed written notice. Steven H. claims that had he known about this defense, he would not have waived his right to a fact-finding hearing on the continuing CHIPS grounds.

CHIPS is the acronym used to denote the phrase "child in need of protection or services" in the Wisconsin Children's Code, Wis. Stat. Ch. 48.

[3] Wisconsin Stat. § 48.356 reads in pertinent part:

**(1)** Whenever the court orders a child to be placed outside his or her home. . .under s. 48.345, 48.347, 48.357, 48.363 or 48.365, the court shall orally inform the parent or parents who appear in court. . .of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child or expectant mother to be returned to the home. . . .

**(2)** In addition to the notice required under sub. (1), any written order which places a child. . .outside the home or denies visitation under sub. (1) shall notify the parent or parents. . .of the information specified under sub. (1).

[4] Wisconsin Stat. § 48.415(2) provides as follows:

**48.415 Grounds for involuntary termination of parental rights.** At the fact-finding hearing the court or jury may make a finding that grounds exist for the termination of parental rights. Grounds for termination of parental rights shall be one of the following. . . .

**(2)** Continuing Need of Protection or Services. Continuing need of protection or services, which shall be established by proving any of the following:

(a) That the child has been adjudged to be a child or an unborn child in need of protection or services and placed, or continued in a

every order placing a child outside his or her home contain the written notice prescribed by § 48.356(2) in order for the termination of parental rights to proceed? The written notice is to describe any grounds for termination of parental rights under Wis. Stat. § 48.415 that may be applicable and the conditions necessary for the child to be returned to the home. The issue is whether the termination of parental rights petition must be dismissed because one or more orders failed to contain such notice. (2) Did the circuit court violate Wis. Stat. § 48.422(3) in conducting the hearing on the petition to terminate parental rights by failing to hear testimony in support of the allegations in the petition, and, if so, was Steven H. prejudiced by the circuit court's error?

¶ 3. We hold that Wis. Stat. §§ 48.356(2) and 48.415(2) do not require that each and every order removing a child from his or her home contain the written notice prescribed by § 48.356(2) in order for the termination of parental rights to proceed. We conclude that Wis. Stat. §§ 48.356(2) and 48.415(2) require that the last order specified in § 48.356(2) placing a child outside the home, which must be issued at least six months before the filing of the petition to terminate parental rights, must contain the written notice prescribed by § 48.356(2). This interpretation of §§ 48.356(2) and 48.415(2) ensures that a parent receives the written notice required by § 48.356(2) in a timely manner and does not vitiate a termination of parental rights proceeding when one or more previous orders fails to contain the statutorily prescribed written notice. Although we conclude that the petition to terminate parental rights need not be dismissed

placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.347, 48.357, 48.363, 48.365. . .containing the notice required by s. 48.356(2). . . .

348

because of the failure of an order in this case to contain the prescribed notice, the better practice is to include the written notice required by § 48.356(2) in all orders to which that statute applies.

¶ 4. Regarding the second issue presented, although the circuit court erred by failing to follow Wis. Stat. § 48.422(3), we conclude on review of the entire record and the totality of the circumstances that Steven H. was not prejudiced by the error. Accordingly, we reverse the decision of the court of appeals.

¶ 5. This case illustrates that the legislature has created numerous procedures to protect parents from the state precipitously or capriciously terminating parental rights. Although the goal of assisting and protecting parents is important, the legislature has instructed courts that the best interests of a child are paramount, that impermanence in family relationships is contrary to the welfare of a child and that more timely decisions about the fitness of parents are needed. Wis. Stat. § 48.01(1)(a). This case involves reading the statutes with these legislative purposes in mind.

I

¶ 6. The relevant facts are set forth below. Brittany was born in February 1995. Waukesha County immediately filed a petition alleging that Brittany was a child in need of protection or services. Proceedings on this petition were held in March and April of 1995. Brittany's mother attended these proceedings; Steven H., Brittany's father, did not. In April 1995, the circuit court left Brittany in her mother's care but approved conditions of supervision for the mother.

¶ 7. In November 1995, upon finding that Brittany's mother was using crack cocaine, Waukesha

County filed an emergency change of placement petition with the circuit court. The circuit court first ordered Brittany placed with her paternal grandparents and subsequently transferred Brittany to a foster home. Neither of these 1995 orders changing placement of the child included notice to the parents that they were in danger of having their parental rights terminated.

¶ 8. In March 1996 the circuit court extended the order placing Brittany outside of her home. This written order was sent to both parents and included conditions the parents were required to meet in order for Brittany to be returned to their care. The written order also included a notice that the parents were in danger of having their parental rights terminated. Both parents were in court when this order was issued and, in addition to the written notice, the circuit court gave the parents an oral warning that their parental rights were in danger of being terminated and of the conditions necessary for Brittany's return.[5]

¶ 9. In May 1996 Steven H. was incarcerated and sentenced to serve a five-year prison term. In April 1997 Waukesha County petitioned to terminate the

[5] Steven H.'s brief states in a cursory fashion that Steven H. did not receive the written order for extension of placement that was issued in March 1996 containing the conditions for Brittany's return and the warning that his parental rights were in danger of being terminated. The circuit court did not decide this factual issue. According to the record, Waukesha County's first attempt at mailing the order to Steven H. was unsuccessful and the order was returned. However, the record shows that mail for Steven H. was to be sent to his parents' address and that the order for the extension of placement was re-sent to that address on April 11, 1996. Steven H. does not elaborate on this point, and we will not address it.

parental rights of both parents on the grounds that Brittany was in continuing need of protection or services pursuant to Wis. Stat. § 48.415(2)(a), (b) and (c), or, alternatively under § 48.415(1)(a)2, that both parents had abandoned her. Brittany's mother did not contest this petition. Steven H. did, however, enter a contest plea and requested a jury trial.

¶ 10. In November 1997 Steven H. moved to dismiss the petition seeking termination of his parental rights, alleging he had not been given the written notice prescribed by Wis. Stat. § 48.356(2). This motion related only to the original dispositional order of April 1995, which set forth the conditions for supervision of Brittany's mother while Brittany was still in the mother's home. Steven H.'s motion to dismiss did not refer to the subsequent orders that placed Brittany in her grandmother's home and in a foster home, neither of which contained the written notice prescribed by § 48.356(2). The circuit court denied the motion to dismiss, concluding that the April 1995 order did not remove Brittany from the parental home and therefore did not require the § 48.356(2) written notice.

¶ 11. In December 1997 Steven H. decided not to contest the fact-finding hearing in the termination of parental rights proceeding and the county agreed to drop the abandonment ground for terminating parental rights. The termination of parental rights proceeding continued only on the ground that the child had been adjudged to be in continuing need of protection or services.

¶ 12. In February 1998 Steven H. requested and received an adjournment until April 1998 for the contested dispositional hearing. Steven H. anticipated his release from incarceration by the April date and hoped that he would be more capable of demonstrating his

parental fitness. He was not, however, released from prison.

¶ 13. Approximately two weeks prior to the hearing, Steven H.'s attorney moved to withdraw from the case at Steven H.'s request. The circuit court denied this request because the case had already been subject to numerous delays. On April 8, 1998, Steven H.'s parental rights were terminated.

¶ 14. Steven H. then filed for post-judgment relief, asserting ineffective assistance of counsel and the inadequacy of the circuit court's colloquy with him regarding the waiver of his right to a fact-finding hearing on the petition to terminate parental rights pursuant to Wis. Stat. § 48.422. The circuit court held a *Machner* hearing[6] and denied Steven H.'s motion.

¶ 15. On Steven H.'s appeal, the court of appeals reversed the circuit court order, concluding that *D.F. v. Juneau County Department of Social Services*, 147 Wis. 2d 486, 433 N.W.2d 609 (Ct. App. 1988), requires that each and every order placing a child outside his or her home must contain the written notice prescribed by § 48.356(2) in order to establish grounds under

---

[6] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). When trial counsel's representation is challenged, a hearing may be held on the effectiveness of counsel.

A *Machner* hearing is held to determine the claim for ineffective assistance of counsel. Steven H.'s motion for post-conviction relief also alleged, however, that the hearing in which he waived his rights to contest the grounds to terminate his parental rights was not conducted in accordance with Wis. Stat. § 48.422. Although it was never clarified whether Steven H.'s argument regarding the § 48.422 violation was properly before the court at the *Machner* hearing, testimony relevant to the claim under Wis. Stat. § 48.422 was heard. We address this argument of Steven H. in Part III of this opinion.

§ 48.415(2)(a) for the involuntary termination of parental rights. The court of appeals held that the failure to object to this deficiency amounted to ineffective assistance of counsel. The court of appeals expressed reluctance to reverse the circuit court order but considered the *D.F.* case controlling. The court of appeals urged this court to consider overturning the *D.F.* case or holding that substantial compliance with Wis. Stat. § 48.356(2) is sufficient.

II

¶ 16. The first issue before this court is whether Wis. Stat. §§ 48.356(2) and 48.415(2) require that each and every order placing a child outside his or her home contain the written notice prescribed by § 48.356(2) in order for the termination of parental rights to proceed. The written notice is to describe any grounds for termination of parental rights under Wis. Stat. § 48.415 that may be applicable and the conditions necessary for the child to be returned to the home. Only if the statutes require such notice in each and every such order is the court of appeals decision that Steven H.'s counsel was ineffective correct. This question of statutory interpretation is a question of law that this court determines independently, benefiting from the analyses of the circuit court and the court of appeals.

¶ 17. Two statutes are pertinent to this issue: Wis. Stat. §§ 48.356(2) and 48.415(2).

¶ 18. The first statute, Wis. Stat. § 48.356(2), requires written notice of the grounds for termination of parental rights which may be applicable and of the conditions necessary for a child to be returned to the home whenever *any written order* under one of the listed statutes places a child outside his or her home.

353

The November 1995 orders initially placing Brittany in her grandmother's home and subsequently placing her in a foster home did not contain the written notice prescribed by § 48.356(2). The March 1996 order extending the November out- of-home placement order did, however, include the statutorily prescribed written notice.

¶ 19. Wisconsin Stat. § 48.356 reads in pertinent part:

> (1) Whenever the court orders a child to be placed outside his or her home. . .under s. 48.345, 48.347, 48.357, 48.363 or 48.365, the court shall orally inform the parent or parents who appear in court. . .of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child or expectant mother to be returned to the home. . . .

> (2) In addition to the notice required under sub. (1), *any written order* which places a child. . .outside the home or denies visitation under sub. (1) shall notify the parent or parents. . .of the information specified under sub. (1). (Emphasis added.)

¶ 20. The second pertinent statute, Wis. Stat. § 48.415(2), establishes as a ground for involuntary termination of parental rights that a child has been adjudged to be in need of protection or services and has been placed outside his or her home "pursuant to *one or more court orders*" under one of the listed statutes (emphasis added). Section 48.415(2) further provides that one or more of these court orders contain the written notice prescribed by § 48.356(2).

¶ 21. Wisconsin Stat. § 48.415(2) provides as follows:

**48.415 Grounds for involuntary termination of parental rights.** At the fact-finding hearing the court or jury may make a finding that grounds exist for the termination of parental rights. Grounds for termination of parental rights shall be one of the following...

**(2)** Continuing Need of Protection or Services. Continuing need of protection or services, which shall be established by proving any of the following:

(a) That the child has been adjudged to be a child or an unborn child in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to *one or more court orders* under s. 48.345, 48.347, 48.357, 48.363, 48.365. . .containing the notice required by s. 48.356(2). . . . (Emphasis added.)

¶ 22. We hasten to point out that although Wis. Stat. § 48.356(2) speaks of written notice in *any order* placing the child outside the home, § 48.415(2) speaks of *one or more court orders* placing the child containing the written notice.

¶ 23. Steven H. is challenging the proceedings that involuntarily terminated his parental rights on the ground that some of the orders which placed Brittany outside her home pursuant to one of the listed statutes did not contain the written notice prescribed by § 48.356(2). The last order entered a year before the start of the proceeding to involuntarily terminate parental rights did contain the written notice required by § 48.356(2). The question presented in this case is the effect of this last order when earlier orders did not contain the statutorily prescribed notice.

¶ 24. The statutes at issue clearly show that the legislative intent was to protect parents' rights by mandating the written notice so that a parent could work to

355

alleviate the kind of behavior that would justify a termination of parental rights. The court of appeals in this case relied on *D.F. v. Juneau County Department of Social Services*, 147 Wis. 2d 486, 433 N.W.2d 609 (Ct. App. 1988), to conclude that the statutory notice must be given in each and every order placing a child outside his or her home pursuant to §§ 48.345, 48.357, 48.363 or 48.365. The court of appeals concluded that "a CHIPS case could have an entire string of such orders all but one containing the required written notice. In such a case, all [termination of parental rights] proceedings would be halted, only to be begun anew, all because of the one defective order." *In re the Termination of Parental Rights of Brittany Ann H.*, No. 98–3033, at 8. The court of appeals viewed its decision in this case vitiating the termination of Steven H.'s parental rights as "tragic," but required by the *D.F.* case.

¶ 25. The court of appeals in *D.F.* correctly stressed the legislature's intent that a parent be put on notice that parental rights may be terminated in the future. The legislature created a panoply of procedures to assure that parental rights will not be terminated precipitously or capriciously when the state exercises its awesome power to terminate parental rights. *D.F.*, 147 Wis. 2d at 494–95 (quoting *In re Termination of Parental Rights to M.A.M.*, 116 Wis. 2d 432, 436–37, 342 N.W.2d 410 (1984)). Included in that panoply of rights is the circuit court's duty to warn and inform a parent under Wis. Stat. § 48.356(2). *D.F.*, 147 Wis. 2d at 495. The notice is necessary to give a parent an opportunity to conform his or her conduct to avoid termination of parental rights. *D.F.*, 147 Wis. 2d at 496.

¶ 26. We agree with the *D.F.* court about the legislative intent and the importance of the statutory

notice. We conclude, however, that *D.F.* does not govern this case. The facts of the two cases are different. In *D.F.* none of the orders placing the child outside the home contained the written notice prescribed by Wis. Stat. § 48.356(2), while in this case the last order did contain the statutory notice.

¶ 27. Steven H. relies on *In re Termination of Parental Rights of Anthony C.*, 219 Wis. 2d 206, 579 N.W.2d 635 (1998). That case, like *D.F.*, stressed the rigor of the statutory procedures established for termination of parental rights. In *Anthony C.* several orders failed to contain the statutory notice. However, the *Anthony C.* court concluded that the orders that did not contain the notice were temporary physical custody orders that need not contain the notice. In *Anthony C.* all orders that were statutorily required to contain the notice did so. *Anthony C.*, 219 Wis. 2d at 219. Thus in *Anthony C.*, unlike the present case, all the orders placing the child outside the home pursuant to §§ 48.345, 48.347, 48.363 or 48.365 contained the requisite statutory notice. *Anthony C.*, 219 Wis. 2d at 224.

¶ 28. Consequently, *D.F.* and *Anthony C.* concerned situations where either none or all of the required notices were given, and not the situation presented here, where the last order, but not the earlier ones, contained the required notice. Accordingly, we conclude that *D.F.* and *Anthony C.* should be limited to the facts presented in each case; they do not determine the result in the different facts presented by this case.

¶ 29. We agree with the *D.F.* and *Anthony C.* cases that the possibility of permanent loss of parental rights persuaded the legislature to adopt a rigorous procedure, including the statutory notice provided in

357

Wis. Stat. § 48.356(2). We do not agree with the court of appeals in *D.F.* that the statutory notice must be given "*each time* an order places a child outside his or her home" in order to continue a termination of parental rights proceeding. *D.F.*, 147 Wis. 2d at 499 (emphasis added). Although Wis. Stat. § 48.356(2) reads that "any order" placing a child outside the home is to include the statutorily prescribed notice, § 48.415(2) reads that "one or more orders" placing a child outside the home is to include the statutorily prescribed notice. Reading §§ 48.356(2) and 48.415(2) together, and in light of the legislative purpose expressed in § 48.01(1)(a) by the 1995 revisions in the Children's Code,[7] we conclude that these statutes do not require the statutorily prescribed written notice to be in *every order* placing a child outside the home.

¶ 30. The words of Wis. Stat. §§ 48.356(2) and 48.415(2) about what orders need to contain the written notice are not consistent, as we pointed out previously. Section 48.356(2) requires that "*any* written order which places a child outside the home" (emphasis added) under specified statutes contain written notice, including notification of any grounds for termination of parental rights. When we turn to the statutory grounds for termination of parental rights we find different language in § 48.415(2). Section 48.415(2) speaks of "*one or more court orders. . .*containing the notice required by s. 48.356(2)" (emphasis added). The words "one or more orders" in § 48.415(2) are not the equivalent of "any," "each," "all," or "every" order.

¶ 31. The language of Wis. Stat. § 48.415(2), in contrast to that of § 48.356(2), thus does not encompass

---

[7] *See* 1995 Act 275.

the concept that any and all orders under the listed statutes must contain the statutory written notice in order for the termination proceedings to be valid. Under § 48.415(2) the parents will be given adequate notice of the conditions for return and time to make any necessary changes to forestall the termination of parental rights if the last order issued at least six months before the filing of the petition involuntarily terminating parental rights contains the written notice.

¶ 32. The statement of legislative purpose in the Children's Code assists the court in interpreting the inconsistent language of the two statutes. Although the legislature has declared that the Children's Code is to be construed liberally to protect children and preserve the unity of the family,[8] the legislature also emphasized that a court may determine whether it is in the best interests of a child for that child to be removed from his or her parents.[9] The courts have the authority, according to the legislature, in appropriate cases, not to reunite a child with his or her family. The legislature emphasized that courts should recognize that instability and impermanence in family relationships are contrary to the welfare of children. The legislature also entreated the courts to recognize the importance to children of eliminating unreasonable periods while their parents try to correct the conditions that prevent the child's return to the family.[10]

---

[8] Section 1m, 1995 Wis. Act 275, amending § 48.01(1)(intro) and § 8m, 1995 Wis. Act 275, renumbering and amending § 48.01(1)(a).

[9] Section 2, 1995 Wis. Act 275, creating § 48.01(1)(ag).

[10] Section 8m, 1995 Wis. Act 275, renumbering and amending § 48.01(1)(a). *See also* Wis. Stat. § 48.01(1)(gg) and (gr) (1997–98).

¶ 33. A Note to the 1995 revisions of the legislative purpose of the Children's Code encapsulates the modifications as focusing attention on the best interests of the child and on the need for courts to make more timely decisions about the fitness of parents. The Note to Wis. Stat. § 48.01 in the session law states:

> As with the other new or modified legislative purpose provisions in the bill, this new language is intended to focus attention on: (1) the best interests of the child. . .and (2) the need for juvenile courts in proceedings and determinations under ch. 48, to take a closer look at, and make more timely decisions regarding, the fitness or unfitness of parents to care for and protect their children.[11]

¶ 34. Before the 1995 revisions, Wis. Stat. § 48.415(2)(c) required that a child be placed outside the home for one year or longer before involuntary termination of parental rights on the ground that the child had been adjudged a child in need of protection or services. In 1995 the time period was reduced to six months.[12] In this case the last order that affected Brittany's placement was issued at least one year before proceedings to terminate parental rights were started. This last order contained the statutorily prescribed written notice of grounds for termination of parental rights and of the conditions necessary for the child to be returned to the home. Thus the last order gave Steven H. adequate warning of the grounds for termination as well as time to fulfill the conditions.

¶ 35. Had Steven H. received an order without the statutorily prescribed written notice after receiving the order with the proper notice, he might be able to

---

[11] Note to § 4, 1995 Wis. Act 275.
[12] Section 78, 1995 Wis. Act 275.

complain that he was confused by the lack of notice and that it was unfair to allow the termination proceedings to continue. But that hypothetical situation is not the case here. The last order in the present case, one of several orders, satisfied the statutory requirements.

¶ 36. If the court interprets the statutes as Steven H. requests, Brittany would likely remain in the impermanence of foster care for many more months until the alleged defects in orders preceding the last order could be cured. This interpretation is not required by the words of Wis. Stat. §§ 48.356(2) and 49.415(2). Furthermore, this interpretation is contrary to the express legislative policy of the Children's Code that courts act in the best interests of a child, that courts avoid impermanence in family relations and that courts eliminate the need for children to wait unreasonable periods of time for their parents to correct the conditions that prevent their return to the family. Wis. Stat. § 48.01(1)(a).

■

¶ 37. The notice required by Wis. Stat. §§ 48.356(2) and 48.415(2) is meant to ensure that a parent has adequate notice of the conditions with which the parent must comply for a child to be returned to the home. The notice is also meant to forewarn parents that their parental rights are in jeopardy. In this case Steven H. received notice one year before the filing of the petition to terminate parental rights and was thus adequately informed of the steps he had to take to avoid termination of parental rights and was given time in which to take those steps. Based on the statutory language and the expressed legislative purpose, we conclude that Wis. Stat. §§ 48.346(2) and 48.415(2) were satisfied in this case and that therefore counsel's

failure to object to the lack of notice did not constitute ineffective assistance of counsel.

### III

¶ 38. The second claim Steven H. makes is that the circuit court violated Wis. Stat. § 48.422(3) in conducting the hearing on the petition to terminate parental rights by failing to hear testimony in support of the allegations in the petition.[13] Wis. Stat. § 48.422(3), governing the hearing of the petition, provides that "if the petition is not contested the court shall hear testimony in support of the allegations in the petition, including testimony as required in sub. 48.422(7)." We turn to § 48.422(7).

---

[13] Steven H. also argues that he was without the effective assistance of counsel because his counsel failed to follow his request, made in January 1998, that counsel seek to withdraw Steven H.'s waiver to a fact-finding hearing. Such a motion, Steven H. now contends, would have properly been based on the failure of the circuit court, at the hearing in which the waiver was entered, to hear testimony in support of the allegations in the petition pursuant to Wis. Stat. § 48.422(3). Such a motion also should have alleged that Steven H. had a defense relating to the lack of written warnings as to the termination of parental rights and conditions for return of Brittany and that Steven H. never received the copy of the written extension order to which proper warnings and conditions for return were attached. We have rejected Steven H.'s argument that the petition for termination was inadequate because the first two orders of placement failed to contain the written warnings prescribed by § 48.356(2). As we explain in this part of the opinion, we agree with Steven H.'s argument that the circuit court failed to follow Wis. Stat. § 48.422(3). We disagree, however, with Steven H.'s position that reversal of the judgment of the circuit court is required under the circumstances of the present case.

¶ 39. Section 48.422(7) imposes four obligations on the circuit court before accepting an admission of the alleged facts in a petition. The circuit court shall: (a) address the parties present and determine that the admission is made voluntarily and understandingly; (b) establish whether any promises or threats were made to elicit an admission; (c) establish whether a proposed adoptive parent of the child has been identified; and (d) make such inquiries as satisfactorily establish a factual basis for the admission.[14]

¶ 40. The procedure set forth in Wis. Stat. § 48.422 addresses the legislative concern that the "power of the state to terminate the parental relationship. . .can only be exercised under proved facts and procedures which assure that the power is justly exercised. . .[and] that the parental rights will not be terminated precipitously, arbitrarily or capriciously."[15]

---

[14] Wisconsin Stat. § 48.422(7) provides as follows:

Before accepting an admission of the alleged facts in a petition, the court shall:

(a) Address the parties present and determine that the admission is made voluntarily with understanding of the nature of the acts alleged in the petition and the potential dispositions.

(b) Establish whether any promises or threats were made to elicit an admission and alert all unrepresented parties to the possibility that a lawyer may discover defenses or mitigating circumstances which would not be apparent to them.

(bm) Establish whether a proposed adoptive parent of the child has been identified. . . .

(c) Make such inquiries as satisfactorily establish that there is a factual basis for the admission.

[15] *In Interest of Robert D.*, 181 Wis. 2d 887, 892, 512 N.W.2d 227 (Ct. App. 1994)(quoting *In re M.A.M.*, 116 Wis. 2d 432, 342

¶ 41. In this case Steven H. entered a no-contest plea to the allegations in the petition to terminate his parental rights.

¶ 42. In prior cases the analysis set forth in *State v. Bangert*, 131 Wis. 2d 246, 274–75, 389 N.W.2d 12 (1986), relating to a circuit court's acceptance of a guilty plea in a criminal case, has been used to evaluate a challenge to the proceeding mandated by Wis. Stat. § 48.422. *See, e.g., In Interest of Robert D.*, 181 Wis. 2d 887, 892, 512 N.W.2d 227 (Ct. App. 1994). Under a *Bangert* analysis, 131 Wis. 2d at 274–75, Steven H. must make a prima facie showing that the circuit court violated its mandatory duties and he must allege that in fact he did not know or understand the information that should have been provided at the § 48.422 hearing. If Steven H. makes this prima facie showing, the burden shifts to the county to demonstrate by clear and convincing evidence that Steven H. knowingly, voluntarily and intelligently waived the right to contest the allegations in the petition. Under *Bangert*, 131 Wis. 2d at 274–75, a court may examine the entire record, not merely one proceeding, and look at the totality of the circumstances to determine whether the circuit court's procedures and determinations are sufficient.

---

N.W.2d 410 (1984)). *See also In the Interest of Kywanda F.*, 200 Wis. 2d 26, 38, 546 N.W.2d 440 (1996).

Waukesha County and the guardian ad litem offer several arguments, including that because Steven H. did not properly address the inadequacy of the circuit court's procedure either in the circuit court or before the court of appeals, he waived the issue. They further contend that only Wis. Stat. § 48.422(7) is applicable to this case, not § 48.422(3), and that § 48.422 applies only to situations in which a petition is not contested at the initial appearance. We do not address these issues because we ultimately are not persuaded by Steven H.'s claim.

¶ 43. There has been no post-judgment motion hearing regarding a *Bangert*-type claim in this case, although the *Machner* hearing on December 9, 1998, addressed similar issues. Neither Steven H.'s brief nor his testimony clearly and affirmatively asserts that he did not know or understand the allegations in the petition or other information that he should have been provided or that he did not understand the waiver of his right to contest the grounds for the termination of parental rights. He does assert that he did not know he had a defense about the lack of notice in the orders extending placement. We have concluded that he had no such defense. Under the *Bangert* test we should proceed no further since Steven H. has failed to meet his duty to make a prima facie showing.

¶ 44. Nevertheless we have examined the entire record to determine whether the colloquy between the circuit court and Steven H. was sufficient to allow Steven H. to waive his right to contest the grounds for termination of parental rights.

¶ 45. We first set forth what happened at the circuit court's hearing on the petition for termination of parental rights on December 18, 1997, at which Steven H. decided not to contest the grounds for termination of parental rights.

¶ 46. At that hearing Steven H. was sworn as a witness and questioned by the circuit court. The circuit court explained to Steven H. that by waiving the fact-finding hearing he was agreeing not to contest the following: that Brittany had been previously found to be in need of protection or services; that Brittany had been placed outside the home; that the agency had made diligent effort to place Brittany back in a family home; and that Steven H. had not fulfilled the conditions prescribed for Brittany's return and that it was

not likely that he could fulfill those conditions within the next 12 months. Steven H. said he understood the claims in the petition and that he was not contesting them.[16] The circuit court explained that if Steven H. contested the facts alleged as grounds for termination of parental rights, the county would have to prove the facts with clear and convincing evidence. Steven H. said he understood.

¶ 47. The circuit court advised Steven H. that, despite his waiver, he still would maintain his right to contest the termination of parental rights. The dispositional issue, explained the court, would be determined at a hearing in April.[17]

¶ 48. Upon questioning under oath, Steven H. said that he understood the court's explanation of his rights and consequences and that he had discussed these matters with his counsel. Steven H. testified that he felt he understood what he was doing. The circuit court also established that no promises or threats were made to elicit the waiver. When asked whether he wished to contest by trial the public's claim that grounds existed to terminate his parental rights, Steven H. replied "No," after hearing the question twice.

¶ 49. No other witness testified at the December 18, 1997, hearing. It is clear from the colloquy that Steven H. understood the nature of the acts alleged in

---

[16] Steven H. asserts that the circuit court's failure to inform him that the absence of written notice in some of the orders extending placement was a defense to the termination of parental rights is reversible error. We disagree with Steven H. and have held that the requisite statutory written notice was given to allow the termination proceedings to continue.

[17] Wisconsin Stat. § 48.427 governs the dispositional hearing and the dispositional order.

the petition and the potential disposition and that he voluntarily, and with understanding, waived his right to contest the fact-finding hearing.

¶ 50. Moreover, one of Steven H.'s attorneys testified at the *Machner* hearing on December 9, 1998, that he had reviewed the petition with Steven H. line by line prior to the December 18, 1997, hearing and that Steven H. understood the facts alleged in the petition. Another of Steven H.'s attorneys also testified that he reviewed the petition with Steven H. prior to the December 18, 1997, hearing.

¶ 51. The circuit court determined that Steven H.'s decision not to contest the factual grounds stated in the petition for termination of parental rights was made with the benefit of counsel, was voluntary, knowledgeable, and intelligent, was made with an understanding of potential consequences and was not coerced.[18] We have independently reviewed the colloquy, as well as the entire record, and we agree with the

---

[18] The issue of whether Steven H.'s admission was made voluntarily and with understanding of the nature of the acts alleged in the petition and the potential dispositions is a question of constitutional fact. *See State v. Bangert*, 131 Wis. 2d 246, 283–84, 389 N.W.2d 12 (1986). The circuit court's findings of historical fact will on review be upheld unless they are clearly erroneous. The circuit court's decision about whether the historical facts meet the constitutional test is a question of law that an appellate court determines independent of the circuit court, benefiting from a prior court's analysis. Nevertheless, because the circuit court has the opportunity to question and observe witnesses and because public policy favors finality of the circuit court's conclusion about the nature of a parent's waiver, the circuit court's conclusion about whether Steven H.'s waiver was given voluntarily and understandingly should be given weight, although the decision is not controlling. *See T.M.F. v. Children's Service Society*, 112 Wis. 2d 180, 188, 332 N.W.2d 293 (1983).

circuit court's conclusion. In sum, Steven H. has failed to make the necessary showing under the *Bangert* analysis.

¶ 52. Although Steven H. agreed not to contest the allegations in the petition, he did not, however, admit the allegations in the petition. Deciding not to contest the allegations of the petition is not equivalent to admitting the allegations in a petition. Thus we need no longer be concerned with Wis. Stat. § 48.422(7), which governs admissions to the facts alleged.

¶ 53. We now examine Wis. Stat. § 48.422(3), which states that if the petition is not contested, the court shall hear testimony in support of the allegations in the petition. The circuit court failed to hear testimony in the present case in support of the allegations in the petition. Instead, at the dispositional hearing Waukesha County asked the circuit court to take judicial notice of the Termination of Parental Rights Report dated December 16, 1997. Steven H. did not object to the circuit court's taking judicial notice of the Report. The Report set forth information supporting the factual allegations but it was not filed with the circuit court until April 14, 1998. The Report standing alone is not testimony. We doubt whether a circuit court can take judicial notice of the facts contained in the Report because the facts are subject to reasonable dispute. *See* Wis. Stat. § 902.01(2).

¶ 54. Lacking any testimony in support of the allegations in the petition to terminate parental rights, the circuit court nevertheless found that the grounds stated in the petition as to Steven H. existed. The circuit court apparently relied on the testimony of Steven H. in the no-contest colloquy and on the recommendation of the guardian ad litem. Steven H. asserts that this finding of the circuit court is invalid because the

circuit court did not comply with Wis. Stat. § 48.422(3) requiring it to hear testimony in support of the allegations in the petition.

¶ 55. The guardian ad litem contends that Wis. Stat. § 48.422(3) does not apply in this case because Steven H. continued to contest the dispositional phase of the proceeding. We do not agree with this interpretation of § 48.422(3).

¶ 56. We conclude that the legislature intended the circuit court to hear testimony in support of the allegations because testimony safeguards accurate fact-finding and protects the parents. Wisconsin Stat. § 48.422(3) required Waukesha County in this case to call a witness to testify in support of the allegations in the petition. We therefore agree with Steven H. that the circuit court erred in failing to comply with Wis. Stat. § 48.422(3).

¶ 57. Nevertheless, under the circumstances of this case we conclude that Steven H. cannot rely on this error to reverse the termination proceedings because he was not prejudiced by the circuit court's failure to comply with the statute.

¶ 58. A factual basis for several of the allegations in the petition can be teased out of the testimony of other witnesses at other hearings when the entire record is examined. Witnesses testified that Brittany had been adjudged to be in need of protection or services and was placed and continued in placement outside of her home; that Steven H. was in prison from May 1996 through December 9, 1998, the post-judgment hearing, and failed to demonstrate substantial progress toward meeting the conditions established for the return of the child to the home; and that there was no substantial likelihood that Steven H. would meet

those conditions within the 12-month period following the fact-finding hearing.

¶ 59. Furthermore, the only defense Steven H. has made to the factual allegations in the petition is that the orders extending placement outside the home did not contain the requisite statutory notices. He has not challenged the factual allegations in the petition, as was made clear at the post-conviction hearing. Steven H. testified at the post-conviction hearing that he thought he had a substantive defense to abandonment as a ground for termination. His only defense asserted to the CHIPS ground for termination was that he did not receive the required notices. We have rejected that defense. Therefore we conclude that Steven H. was not prejudiced by the circuit court's failure to follow the procedures mandated by Wis. Stat. § 48.422(3).

¶ 60. Although we have grave concerns about the circuit court's failure to follow the procedure set forth in Wis. Stat. § 48.422(3), our examination of the entire record in the present case persuades us that there are insufficient grounds to justify our overturning the circuit court's judgment in this case.

¶ 61. For the reasons set forth we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.