DAVID T. PROSSER, J.
¶ 59. (concurring). This case presents a classic example of the challenges facing appellate courts. It compels us to resolve a question arising out of the convergence of ambiguous statutory language, well-reasoned but conflicting precedent, and a heart-wrenching factual situation.
¶ 60. Wisconsin Stat. § 48.415 is the Wisconsin statute listing grounds for the termination of parental rights. Subsection (2) discusses the ground of "Continuing Need of Protection or Services" and sets out what a county must prove to establish this ground.
¶ 61. Subsection (2)(a)l. lists the first item of proof:
*208 (a)l. That the child has been adjudged to be a child ... in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.347, 48.357, 48.363, 48.365, 938.345, 938.357, 938.363 or 938.365 containing the notice required by s. 48.356(2) or 938.356(2).
¶ 62. To understand what the first item of proof requires, we must examine and interpret Wis. Stat. § 48.356, especially subsection (2). The statute reads:
48.356 Duty of court to warn.
(1) Whenever the court orders a child to be placed outside his or her home, orders an expectant mother of an unborn child to be placed outside of her home, or denies a parent visitation because the child or unborn child has been adjudged to be in need of protection or services under s. 48.345, 48.347, 48.357, 48.363, or 48.365 and whenever the court reviews a permanency plan under s. 48.38(5m), the court shall orally inform the parent or parents who appear in court or the expectant mother who appears in court of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child or expectant mother to be returned to the home or for the parent to be granted visitation.
(2) In addition to the notice required under sub. (1), any written order which places a child or an expectant mother outside the home or denies visitation under sub. (1) shall notify the parent or parents or expectant mother of the information specified under sub. (1).
¶ 63. As the majority opinion explains, after St. Croix County presented its case at a fact-finding hearing, Juanita's counsel moved the circuit court to dismiss the TPR petition on grounds that the county had *209 failed to prove elements related to the statutory sections quoted above. Majority op, ¶ 10. In short, Juanita claimed that the county had not provided adequate written notice under the statutes.
¶ 64. One of the ablest circuit judges in Wisconsin, Edward F. Vlack, concluded that there had been "substantial compliance."
¶ 65. Judge Vlack's terminology was ironic because in 1988 the court of appeals held: "If a statute is mandatory, its observance is usually said to be imperative. We conclude that substantial compliance with sec. 48.356(2), Stats., is insufficient." D.F.R. v. Juneau Cty. DSS, 147 Wis. 2d 486, 493, 433 N.W.2d 609 (Ct. App. 1988) (citation omitted). The court of appeals then ruled: "Because the department did not establish that D.F.R.'s children had been outside her home for a cumulative total period of one year or longer pursuant to dispositional orders containing the notice required by sec. 48.356(2), Stats., the trial court erred in terminating D.F.R.'s parental rights." Id. at 499.
¶ 66. The result in D.F.R. introduced grave uncertainty and hardship into the lives of two young children.
¶ 67. More than a decade later, this court reviewed a case in which the circuit court terminated a father's rights to his daughter. The court of appeals reversed the circuit court because some orders removing the daughter from her home did not include the written notice prescribed by Wis. Stat. § 48.356(2) (1997-98).
¶ 68. The court of appeals reluctantly followed the D.F.R. case:
Despite our firm belief that substantial compliance should apply in this case, we are compelled by D.F.R. v. *210 Juneau County Department of Social Services, 147 Wis. 2d 486, 433 N.W.2d 609 (Ct. App. 1988), to reverse the termination order.
This is an extremely unfortunate case. However, the result is compelled by the statutes and D.F.R. The author of this opinion has believed D.F.R. to be incorrect from the beginning. This court believed when D.F.R. was decided, and still believes now, that substantial compliance is a viable and reasonable tool with which to reach the correct result in a case like this one. When a parent receives actual notice, like the one Steven orally obtained from the trial court at the March 27, 1996 hearing, the hypertechnical notice requirements of the statute should not have to be followed to the letter.
Waukesha Cty. v. Steven H., No. 1998AP3033, unpublished slip op. at 2, 7 (Wis. Ct. App. Feb. 24, 1999).
¶ 69. On review, a unanimous supreme court reversed, concluding that:
Wis. Stat. §§ 48.356(2) and 48.415(2) do not require that each and every order removing a child from his or her home contain the written notice prescribed by § 48.356(2) in order for the termination of parental rights to proceed. ... This interpretation of §§ 48.356(2) and 48.415(2) ensures that a parent receives the written notice required by § 48.356(2) in a timely manner and does not vitiate a termination of parental rights proceeding when one or more previous orders fails to contain the statutorily prescribed written notice.
Waukesha Cty. v. Steven H., 2000 WI 28, ¶ 3, 233 Wis. 2d 344, 607 N.W.2d 607.
¶ 70. There were no amendments to the relevant statutes between 1988 and 2000 that necessitated an *211 altered interpretation of the two statutes. What changed was the court's perception that unbending adherence to the statutory text was producing unconscionable results for children, even though the affected parents had received plenty of actual notice, though perhaps not the repeated written notice implied by Wis. Stat. § 48.356(2).
¶ 71. This court's Steven H. opinion was a brilliant exercise of judicial craftsmanship. It discerned the ambiguity in the wording of Wis. Stat. § 48.356 in relation to Wis. Stat. § 48.415(2). It distinguished the D.F.R. case. It seized on a fact — that the "last order entered a year before the start of the proceeding to involuntarily terminate parental rights did contain the written notice required," Steven H., 233 Wis. 2d 344, ¶ 23 — to create a rule. It addressed earnestly the critical importance of protecting parents from the state "precipitously or capriciously terminating parental rights." Id., ¶ 5. It admonished judges that "the better practice is to include the written notice" in § 48.356(2) in all orders to which the statute applies. Id., ¶ 3.
¶ 72. The plain truth, however, is that the opinion in Steven H. deliberately chose not to follow the strict terms of the statute. Thus, it opened the door for the majority opinion in this case.
¶ 73. The entire court approved the Steven H. opinion in 2000. The entire court should approve the majority opinion now. Footnote 9 of the majority opinion succinctly provides the foundation for the court's inevitable decision and illustrates why the facts make the law.
f 74. For the foregoing reasons, I respectfully concur.