COURT OF APPEALS
DECISION
DATED AND FILED

July 19, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP89**

STATE OF WISCONSIN

Cir. Ct. No.  2020TP242

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO G.H., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

   PETITIONER-RESPONDENT,

   V.

M.B.,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed.*

¶1      DUGAN, J.[1]  Mary appeals an order of the trial court terminating her rights to her daughter.[2]  Mary argues that her no-contest plea was not entered knowingly, intelligently, and voluntarily as a result of a defect in the plea colloquy.  She further argues that the trial court erroneously exercised its discretion at the disposition hearing and relied on facts that are not supported by the record when it terminated her parental rights.  This court disagrees, and for the reasons set forth below, this court affirms.

## BACKGROUND

¶2      The State filed a petition to terminate Mary's parental rights to her daughter on November 4, 2020.[3]  The petition alleged that Mary failed to assume parental responsibility and that her daughter continued to be a child in need of protection or services (CHIPS).  While Mary suffered from mental health, hoarding, and substance abuse issues for many years, Mary was particularly overcome with stress and anxiety and experienced the return of substance abuse issues following the death of Grace's father in 2019.  As a result, Mary was left physically unable to move for hours at a time, and Mary would sometimes spend days at a time in bed.  Mary's hoarding issues also rendered her unable to care for her daughter and provide a safe and clean living environment.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] For ease of reference and to protect the confidentiality of the proceedings, pseudonyms will be used to refer to the mother and daughter.

[3] The petition was originally filed on November 2, 2020.  However, Mary was not married to Grace's assumed father, and therefore, an amended petition was filed on November 4, 2020, to add the termination of the rights of any unknown father.

¶3    Mary entered a no-contest plea to the CHIPS grounds. The trial court conducted a plea colloquy and informed Mary that she had "a right to a jury trial or a trial to me, the judge, if that's what you wanted, to decide whether or not the State has proven a ground, or a reason, to terminate your parental rights." The trial court further informed Mary that "at that trial the State would have to prove by clear, convincing, and satisfactory evidence that in fact at least one of those grounds has been proven" and "the State would do that by calling witnesses to the stand." The trial court further informed Mary, "You would have the right to cross-examine them. You would also have the right to introduce your own evidence. You would have the right to use subpoenas to require witnesses to come to court and testify for you." The trial court also informed Mary, "You would also have the right to testify yourself, or you could remain silent; although, silence can be used against you in this case because it's not criminal. You have all those trial rights that I've just listed whether it's tried to the judge or to a jury."

¶4    The trial court continued by explaining the effect her plea had on the second phase of the proceedings:

> I just want to make sure you understand that by pleading no contest in the grounds phase, this first half of the trial, you're not agreeing that it's in [Grace]'s best interest that your parental rights be terminated. You're still keeping the right to fight about that at a later date.

Mary responded in the affirmative, and the trial court further informed Mary about the second phase of the proceedings:

> Now, at that second phase that we talked about where I decide whether it's in [Grace]'s best interest to have your parental rights be terminated, you again have a right to a trial about that, although, it's just a trial to me, the judge, not to a jury. *You'll have all those same trial rights that I just listed before.* Do you understand that by pleading no contest today you're not giving up any of those rights?

(Emphasis added.) Following the colloquy, the trial court accepted Mary's no-contest plea.

¶5 The case proceeded to the dispositional phase, and the trial court held a hearing on June 22, 2021, at which Mary, the original case manager, the current case manager, the mother from Grace's current placement, and an individual who had conducted a bonding assessment testified.[4]

¶6 Overall, the testimony showed that Mary and Grace had a bond, and it was clear that Grace loved Mary. However, Grace's attachment to Mary was insecure, and one of the case managers testified that Grace comforted Mary during visits because Mary was not properly controlling her mental health. Thus, while there were no signs of physical abuse and Grace was otherwise a healthy child, it was in Grace's best interest to have Mary's parental rights terminated to allow Grace to live in a home with a parent that provided the stability and support that Grace needed to have as a six-year-old child. As the case managers also testified, Mary struggled to control her mental health and hoarding issues and, because Mary had made little progress in doing so since Grace was removed from Mary's home in 2019, it was not in Grace's best interest to have Grace continue to wait until Mary was able to regain that control.

¶7 At the end of the hearing, the trial court found that it was in Grace's best interest to terminate Mary's parental rights. In so doing, the trial court found that Mary has "some significant issues that are very difficult to address and

---

[4] The court notes that the transcript for the afternoon session of the June 22, 2021 disposition hearing can be found at Record No. 69. This record appears to be mislabeled as the afternoon session for the June 9, 2021 hearing. This court has reviewed all of the transcripts, and it does not appear that any are missing.

4

correct" that "have existed for about a decade in various forms" and "they haven't ameliorated." The trial court further found that "the most important thing for [Grace] right now is to have stability and permanency," and Grace's insecure attachment to Mary was "the harbinger" of Grace's need for stability. The trial court also found that a guardianship was inappropriate because it would put Grace "in the middle of a never ending tug of war and manipulation" because Mary was "not always very good at keeping boundaries" and "remember[ing] that she's the parent."

¶8 Mary filed a motion for postdisposition relief, and the trial court held a hearing at which Mary and her trial counsel testified. The trial court denied Mary's motion, and Mary now appeals. Additional relevant facts will be set forth below as needed.

## DISCUSSION

¶9 On appeal, Mary argues that she is entitled to plea withdrawal because her plea was not knowing, intelligent, and voluntary as a result of a defect in the plea colloquy.[5] She also argues that the trial court erroneously exercised its discretion at the disposition phase of the proceedings because it relied on facts that are not supported by the record. This court addresses each argument in turn.

---

[5] Mary also raised an argument below that she is entitled to withdraw her plea because she received ineffective assistance of counsel. She does not raise an argument for ineffective assistance of counsel on appeal.

### I.     Mary's plea was knowing, intelligent, and voluntary

¶10     The burden-shifting analysis that our supreme court laid out in *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), applies when a parent in a termination of parental rights (TPR) proceeding alleges that a no-contest plea was not knowingly, intelligently, and voluntarily entered. *Oneida Cnty. DSS v. Therese S.*, 2008 WI App 159, ¶6, 314 Wis. 2d 493, 762 N.W.2d 122. "Under that analysis, the parent must make a prima facie showing that the circuit court violated its mandatory duties and must allege the parent did not know or understand the information that should have been provided at the hearing." *Id.* If a parent makes a prima facie showing, "the burden shifts to the [petitioner] to demonstrate by clear and convincing evidence that the parent knowingly and intelligently waived the right to contest the allegations in the petition." *Id.* This court "may examine the entire record, not merely one proceeding, and look at the totality of the circumstances to determine whether the circuit court's procedures and determinations are sufficient." *Waukesha Cnty. v. Steven H.*, 2000 WI 28, ¶42, 233 Wis. 2d 344, 607 N.W.2d 607. Whether the parent made a prima facie case is a question of law that this court reviews independently. *Brown Cnty. DHS v. Brenda B.*, 2011 WI 6, ¶27, 331 Wis. 2d 310, 795 N.W.2d 730.

¶11     Mary argues that her plea colloquy was defective because the circuit court misinformed her that she had the "trial right" to have the State prove by clear and convincing evidence at the disposition that it was in Grace's best interest to terminate her parental rights, and she further argues that the record shows that she did not otherwise understand the appropriate burden that would apply at the disposition. The State and the guardian ad litem (GAL) argue that, even if the circuit court did misinform Mary of the State's burden at the dispositional phase,

Mary was nonetheless aware of the standard that applied. This court agrees with the State and the GAL.

¶12 "[T]he parent must be informed of the statutory standard the court will apply at the second stage." *Therese S.*, 314 Wis. 2d 493, ¶16. "That is, the court must inform the parent that '[t]he best interests of the child shall be the prevailing factor considered by the court in determining the disposition[.]'" *Id.* (citation omitted). As the State contends, Mary was fully aware that the standard to be applied at the disposition was the best interest of the child and that this was a determination made by the judge. During the plea colloquy, the trial court properly informed Mary that the disposition would be a trial to the court and the best interest of the child standard would apply. Specifically, the trial court stated, "Now, at that second phase that we talked about where I decide whether it's in [Grace]'s best interest to have your parental rights be terminated, you again have a right to a trial about that, although, it's just a trial to me, the judge, not to a jury."

¶13 However, relying on *State v. A.G.*, No. 2021AP1476, unpublished slip op. (WI App. Feb. 15, 2022), Mary particularly takes issue with the trial court's statement in which it referred back to "trial rights" that it listed as applicable to the grounds phase of the proceedings, and Mary argues that this misstated that the State bears a burden at the disposition that it does not have. In fact, Mary maintains that the State could stand utterly silent at the disposition because it has no burden at the disposition.

¶14 Assuming that Mary understood the trial court to be referring back to its statement that the State bears a burden of proving the grounds by clear, convincing, and satisfactory evidence when it used the phrase "trial rights," the record clearly shows that Mary was otherwise informed that the standard

applicable to the disposition was the best interest of the child and that this was a determination left to the judge. This was all that was necessary to provide to Mary. *See **Therese S.***, 314 Wis. 2d 493, ¶16.

¶15 Moreover, apart from the plea colloquy, a letter to Mary from her trial counsel correctly informed Mary of the standard applicable to the disposition, and the trial court also outlined the appropriate procedure for a TPR at the initial appearance, for which Mary was present. Additionally, as the trial court correctly highlighted at the postdisposition hearing, the State, as the petitioner seeking to terminate Mary's parental rights, ultimately bears some burden at the disposition. "The State is the driving engine seeking that outcome," and "it's the State that's going to have to convince the [c]ourt" that it is in the child's best interest to terminate the parent's rights.

¶16 Considering the totality of the circumstances, this court is not persuaded that Mary did not understand the standard applicable to the disposition, and therefore, Mary is not entitled to withdraw her plea as one that was not knowingly, intelligently, and voluntarily entered.

**II.    The trial court did not erroneously exercise its discretion**

¶17 Mary additionally argues that the trial court erroneously exercised its discretion at the disposition and relied on facts that were not supported by the record when it rendered its decision to terminate her parental rights. Mary specifically points to the trial court's findings that she suffered from mental health, substance abuse, and hoarding issues for ten years "without amelioration"; that Mary would seek to reverse a guardianship; and that terminating Mary's parental rights would bring stability and permanency to her daughter. The State and the GAL argue that these facts as found by the trial court are supported by the record

and Mary's argument is merely a disagreement with the trial court's reasonable interpretation of the information with which it was presented. This court again agrees with the State and the GAL.

¶18 The decision to terminate parental rights is committed to the trial court's discretion. *State v. Margaret H.*, 2000 WI 42, ¶¶27, 32, 234 Wis. 2d 606, 610 N.W.2d 475. This court will not overturn a discretionary decision of the trial court if it applied a correct standard of law to the facts and reached a conclusion that a reasonable judge could reach. *Id.*, ¶32. The facts as found by the trial court are accepted unless they are clearly erroneous. *Steven H.*, 233 Wis. 2d 344, ¶51 n.18.

¶19 The individual who conducted the bonding assessment testified that she observed an insecure and disorganized attachment between Mary and her daughter. She explained that this type of insecure attachment is the result of a lack of trust that the child has in the caregiver, and she posited that Mary's lifestyle left Grace feeling unstable and insecure. She further explained that Grace clearly loved Mary, but the type of attachment that Grace exhibited demonstrated that Grace lacked trust in Mary. Moreover, when she performed the bonding assessment, she observed that Grace accepted, but did not initiate, affection with Mary.

¶20 The former case manager also testified about the visits that occurred over the course of this case. She explained that Mary's uncontrolled mental health and hoarding issues became a problem for continuing visits at Mary's home and resulted in the visits being moved from Mary's home to a facility where visits could be supervised. She further testified that Mary's mental health issues manifested themselves physically and Mary would spend days in bed, leaving her

unable to care for Grace, and there were times during the visits where Grace was attending to her mother instead of her mother attending to her. During the time that she was the case manager, she also did not see any improvement in Mary's mental health or hoarding issues, and Mary was not "any place near" being able to meet Grace's needs.

¶21 The current case manager provided similar testimony. She testified that Mary struggles to maintain appropriate boundaries with Grace, and she acknowledged that, while Mary had "taken steps," she believed that "as far as we are in the case, those steps are not quite big enough right now."

¶22 In short, this testimony is more than sufficient to support the facts as found by the trial court, and therefore, the trial court did not erroneously exercise its discretion at the disposition.

## CONCLUSION

¶23 Accordingly, this court rejects Mary's arguments that her plea was not knowingly, intelligently, and voluntarily entered and that the trial court relied on facts that were not supported by the record and erroneously exercised its discretion. This court, therefore, affirms.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.