**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 22, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.   2019AP1776
2019AP1777**

Cir. Ct. Nos.  2018TP36
2018TP37

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

---

NO. 2019AP1776

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.L.H., A PERSON UNDER THE AGE OF 18:

KENOSHA COUNTY DEPARTMENT OF HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

M.M.B.,

    RESPONDENT-APPELLANT.

---

NO. 2019AP1777

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.L.H., A PERSON UNDER THE AGE OF 18:

**KENOSHA COUNTY DEPARTMENT OF HUMAN SERVICES,**

   **PETITIONER-RESPONDENT,**

  **V.**

**M.M.B.,**

   **RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Kenosha County: JODI L. MEIER, Judge. *Affirmed*.

¶1   REILLY, P.J.[1]   M.M.B.[2] appeals from orders terminating his parental rights to M.L.H. and J.L.H. and from orders denying his postdisposition motion.  The father pled no contest to the allegation that M.L.H. and J.L.H. were children in continuing need of protection or services (CHIPS) at the grounds phase of the termination of parental rights (TPR) proceeding, and the circuit court subsequently determined at the dispositional phase that it was in the best interests of the children that his parental rights be terminated.  The father now argues that he is entitled to withdraw his no contest plea as he received ineffective assistance of counsel.  We disagree and affirm the circuit court's orders.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  Going forward, we will refer to M.M.B. as "the father."

2

## BACKGROUND

¶2 M.L.H., born January 12, 2010, was placed outside the home of a parent in August 2014. J.L.H., born August 7, 2012, was placed outside the home of a parent in January 2014. Both were found to be CHIPS in October 2014. The father did not meet the conditions for return, and in June 2018, the Kenosha County Department of Human Services (the County) filed TPR petitions against the father, claiming continuing CHIPS pursuant to WIS. STAT. § 48.415(2).[3]

¶3 The impetus for the TPR petitions in this case stem from the children's unique and serious medical and mental health needs, which prompted the State of Wisconsin to designate them as "special needs" children. Both have been diagnosed with Glut-1 Transporter deficiency,[4] a life-threatening illness. M.L.H. also has a long list of additional health issues, including cerebral palsy, asthma, and a congenital heart disorder, as well as several mental health diagnoses, including disinhibited social engagement disorder, attachment disorder, developmental delays, and speech issues. J.L.H. was diagnosed with a severe

---

[3] The father was the adjudicated father of both boys as, per the birth mother, the father "told her to put unknown father on both her children's birth certificates." The birth mother of M.L.H. and J.L.H. was also subject to TPR petitions, but is not a party to this appeal.

[4] According to the explanation provided by a pediatric neurologist and set forth in the court report for termination of parental rights, "Glut-1 deficiency results in inability of glucose to enter the brain adequately. Because of this, these children have insufficient cellular energy to permit normal brain growth and function. The result is impairment in the child's ability to think, learn, socialize and move. Some of the symptoms can include intellectual disabilities, speech and language problems, limited attention span, inappropriate or disruptive behavior, ADHD, muscle spasticity, ataxia, and dystonia as well as seizures." "There is no cure for a Glut-1 deficiency, however the Ketogenic diet (high in fat and low in carbohydrates) is an effective treatment that prevents or controls signs and symptoms."

form of Glut-1 deficiency that causes seizures, as well as a heart murmur, asthma, cognitive delays, and speech issues.

¶4      The father initially contested the TPR petitions and a jury trial was scheduled on the grounds phase,[5] but on the date of trial the father entered a no contest plea to the continuing CHIPS ground as to both M.L.H. and J.L.H.  After a substantial plea colloquy, the circuit court accepted the father's no contest plea as having been entered knowingly, intelligently, and voluntarily and received testimony from a case worker with the County who testified as to each of the elements of continuing CHIPS pursuant to WIS. STAT. § 48.415(2).  The circuit court accepted the father's admission and found him "unfit."

¶5      The basis for the County's finding that the father had failed to meet the conditions required for the safe return of the children was that he "has not consistently demonstrated appropriate parenting skills during visitations with the [children]" and "has not consistently demonstrated an understanding of [the children's] special needs," among other reasons.  Specifically, the case worker testified that during visitations with the children the father "struggled to recognize the needs of each of the children and struggled to appropriately respond."  For example, there were situations where M.L.H. "would become dysregulated and aggressive and upset, and [the father] would not intervene or attempt to redirect" M.L.H.  The case worker testified that the father "often has reported to providers

---

[5] There are two phases in a TPR proceeding: a "grounds" or "unfitness" phase and a dispositional phase.  *See Steven V. v. Kelley H.*, 2004 WI 47, ¶¶24-27, 271 Wis. 2d 1, 678 N.W.2d 856.  At the grounds phase, the circuit court determines whether the parent is unfit based on one of grounds listed in WIS. STAT. § 48.415.  *Steven V.*, 271 Wis. 2d 1, ¶¶24-25.  If the parent is found unfit, the case proceeds to the dispositional phase, during which the court determines if termination is in the best interests of the child.  *Id.*, ¶27.

that he does not believe that the boys have special needs, and that the boys behave in a manner in which they behave because they need to be at home with him." Further, the case worker reported that the father does not have a good understanding about the special diet the children require as he confuses a gluten-free diet with the Glut-1 deficiency and has reported that "this isn't a diet that the boys need to follow, or that he has neighbors or friends whose children have similar behaviors or similar symptoms, and they are fine not being on a Glut-1 specific diet."

¶6    Further, the County ended visitation with the father around January 2018 at the request of the children. According to the case worker, J.L.H. did not give a reason, but M.L.H. indicated that he had "some concerns about being safe" with the father and M.L.H.'s "behaviors escalate, and he does not like that feeling, himself, of how he responds." At one point it was reported that after a visit with the father, "Kenosha Police and Juvenile Crisis had to be called" as M.L.H. was "making threats that he wanted to harm himself and harm his parents."

¶7    The case was ultimately set for a dispositional hearing. After hearing testimony from the case worker, the father, and addressing the appropriate factors under WIS. STAT. § 48.426(3), the circuit court determined that it was in the best interests of M.L.H. and J.L.H. that the father's parental rights be terminated. The father filed a postdisposition motion to vacate the termination order and permit him to withdraw his plea. After conducting postdisposition hearings, the circuit court denied the father's motion. The father appeals.

**DISCUSSION**

¶8     The father argues that the orders terminating his parental rights to M.L.H. and J.L.H. should be vacated and that he is entitled to withdraw his no contest plea as he received ineffective assistance of counsel.[6] According to the father, trial counsel was constitutionally ineffective "when he advised [the father] to give up his right to a jury trial in the grounds phase even though [the father] wanted to retain his rights to his children" as the father "claimed he met the conditions of return and [the County] had not made reasonable efforts to provide court ordered services." The father also argues that we should reverse the circuit court's decision in the interest of justice pursuant to WIS. STAT. § 752.35 as the real controversy has not been tired. As we conclude that trial counsel did not perform deficiently, we affirm the circuit court's decision denying the father's motion to vacate the orders and withdraw his plea.

---

[6] In the circuit court, the father argued three bases for his request to withdraw his plea: (1) ineffective assistance of counsel, (2) failure to take an adequate plea colloquy, and (3) that the father did not make a knowing, intelligent, and voluntary waiver of his right to contest the allegations. The father abandoned the second basis before the circuit court. Although the father argues several times in his briefing before this court that he "was 60 years old, with a third grade education, whose primary language was Spanish," the father appears to have abandoned any argument that he did not make a knowing and intelligent decision to plead no contest due to lack of understanding.

A no contest plea at the grounds phase of a TPR proceeding must be made knowingly, intelligently, and voluntarily. *See Waukesha Cty. v. Steven H.*, 2000 WI 28, ¶42, 233 Wis. 2d 344, 607 N.W.2d 607. Before accepting a no contest plea to a termination petition, the court must engage the parent in a colloquy to establish that the plea was entered knowingly, intelligently, and voluntarily pursuant to WIS. STAT. § 48.422(3) and (7) and *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). *See Kenosha Cty. DHS v. Jodie W.*, 2006 WI 93, ¶25, 293 Wis. 2d 530, 716 N.W.2d 845. Although the father does not argue before this court that the plea colloquy was deficient or that the father did not understand the proceedings or the rights he was giving up, for the sake of finality, our review of the record indicates that the plea colloquy complied with the applicable requirements. We also agree that the record supports the circuit court's finding that the father understood the proceedings; made a knowing, intelligent, and voluntary decision to plead no contest; and his testimony at the postdisposition hearing that he did not understand the proceedings was not credible.

¶9    A parent in a TPR proceeding has a statutory right to effective counsel. WIS. STAT. § 48.23(2); *Oneida Cty. DSS v. Nicole W.*, 2007 WI 30, ¶33, 299 Wis. 2d 637, 728 N.W.2d 652. This court reviews a claim that a parent in a TPR proceeding received ineffective assistance of counsel, like in a criminal case, under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See A.S. v. State*, 168 Wis. 2d 995, 1004-05, 485 N.W.2d 52 (1992). Under the *Strickland* test, the party asserting an ineffective assistance of counsel claim must prove both that counsel's performance was deficient and that he or she was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687. We need not address both prongs of the *Strickland* test if the party does not make a sufficient showing on one prong. *Id.* at 697. Whether a parent received ineffective assistance of counsel presents a mixed question of fact and law, and we will uphold the circuit court's factual determinations unless they are clearly erroneous. *See State v. Pitsch*, 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985). Whether trial counsel's performance was deficient and whether it prejudiced the parent are questions of law we review de novo. *See id.*

¶10    To establish deficient performance, the parent must show that trial counsel's acts or omissions were "outside the wide range of professionally competent assistance." *See Strickland*, 466 U.S. at 690. "Counsel enjoys a 'strong presumption' that his [or her] conduct 'falls within the wide range of reasonable professional assistance.'" *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted). "Reviewing courts should be 'highly deferential' to counsel's strategic decisions and make 'every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *State v. Domke*, 2011 WI 95, ¶36, 337 Wis. 2d 268, 805

7

N.W.2d 364 (citation omitted); *see also* **Strickland**, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). "[C]ounsel's performance need not be perfect, nor even very good, to be constitutionally adequate." **Carter**, 324 Wis. 2d 640, ¶22.

¶11    To establish prejudice, the parent must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See* **Pitsch**, 124 Wis. 2d at 642 (quoting **Strickland**, 466 U.S. at 694). "It is not sufficient for the [parent] to show that his counsel's errors 'had some conceivable effect on the outcome of the proceeding.'" *See* **Domke**, 337 Wis. 2d 268, ¶54 (citation omitted). When the issue is a motion to withdraw a plea within the context of a claim of ineffective assistance of counsel, the prejudice analysis does not focus on whether the parent is likely to prevail on grounds; instead, the parent "must allege facts to show 'that there is a reasonable probability that, but for the counsel's errors, he would not have [stipulated to grounds] and would have insisted on going to trial.'" *See* **State v. Bentley**, 201 Wis. 2d 303, 312, 548 N.W.2d 50 (1996) (citation omitted); *see also* **Hill v. Lockhart**, 474 U.S. 52, 59 (1985).

¶12    In this case, the father argues that trial counsel was ineffective for advising the father to waive his right to a jury trial and enter a no contest plea as he failed to take into account the bifurcated nature of TPR proceedings. According to the father, "under the facts of this case there was no reasonable likelihood that the [circuit court's] exercise of discretion would result in the Court denying the petition to terminate," and, "[t]herefore, [trial counsel's] justification for recommending that [the father] waive his right to a jury trial and plead no

8

contest in the grounds phase was unreasonable." The father argues that had he gone to trial at the grounds phase, he could have presented testimony from a private investigator hired by trial counsel, who testified at the postdisposition hearing that the County "didn't treat [the father] well" and that the County "sided with" the foster parents. In essence, the father argues that his best chance at avoiding termination was at the grounds phase because he believed that he had met all the conditions of return and that the County had failed to make reasonable efforts to provide the services ordered by the court; therefore, trial counsel's strategy of challenging the case at the dispositional phase where the best interests of the children are paramount was unreasonable. We disagree.

¶13 At the postdisposition hearing, trial counsel testified that he had represented the father since the CHIPS cases and was familiar with the father and the circumstances of the children. Based on that history and his review of the records in this case, trial counsel believed that "the jury would have found in favor of the position take by [the County]" and a trial "would have made even clearer that [the father] was not capable of meeting [the children's] individual needs." He testified that it was his belief that the father had not met all his conditions of return. According to trial counsel, he discussed the change of plea with the father on multiple occasions and reiterated that it was the father's decision as to whether to go to trial. Trial counsel also explained his strategy, testifying that he thought it would be negatively impactful for the court to hear "days of essential criticism of [the father's] ability to parent these two boys." Counsel testified that he could present a better case at the dispositional hearing where he could show that the father was a very good father to another child and try to convince the court to give him the chance to be the same kind of father to the children.

¶14    We conclude that trial counsel's strategy of avoiding a trial where the father would be repeatedly viewed in a negative light at the grounds phase in favor of presenting the father as a capable parent at the dispositional phase was a reasonable and rational strategy based on the facts of this case.  As the circuit court expressed, conditions of return are not just boxes that are checked off on a list; it is about getting a parent "in a position to safely have the children returned to their care."  There was sufficient evidence presented in the record as well as testimony at the hearing to support a finding that the father was unfit at the grounds phase.  The court found that trial counsel's "strategic recommendation is one that many attorneys employ in" TPR proceedings, and it is "a plausible strategy."  Trial counsel had long represented the father and had knowledge of the circumstances involving the children, trial counsel reviewed the entire social services record, and he hired a private investigator to observe the father and his interactions with the County and the children.  Based on this thorough investigation of the law and the facts, trial counsel recommended a strategy that the father enter a no contest plea at the grounds phase.  *See **Strickland***, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").    This recommendation did not fall "outside the wide range of professionally competent assistance."  *See **id.***    Accordingly, we conclude that trial counsel provided effective assistance of counsel.[7]

---

[7] As trial counsel provided effective assistance in this case, we need not consider the prejudice prong of the ***Strickland*** analysis.  *See **Strickland v. Washington***, 466 U.S. 668, 697 (1984).

(continued)

¶15 Finally, we address the father's argument that we should reverse in the interest of justice. We may reverse an order "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried," and in such cases, we may remand for a new trial "as ... necessary to accomplish the ends of justice." WIS. STAT. § 752.35. "The power to grant a new trial when it appears the real controversy has not been fully tried 'is formidable, and should be exercised sparingly and with great caution.'" *State v. Sugden*, 2010 WI App 166, ¶37, 330 Wis. 2d 628, 795 N.W.2d 456 (citation omitted). We exercise our power to grant a discretionary reversal only in exceptional cases. *Id.* As the father entered his plea knowingly, intelligently, and voluntarily; was assisted by effective counsel; and has stated no other compelling reason for us to reverse, we decline to exercise our § 752.35 discretionary reversal power.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

The father also does not challenge any aspect of the dispositional hearing on appeal. Once the parent has been found unfit at the grounds phase, the court's decision to terminate a parent's rights turns on the best interests of the child. *See* WIS. STAT. §§ 48.01(1), 48.426(2). Our review of the record indicates that the circuit court properly addressed the six factors under § 48.426(3). We conclude that the circuit court applied the proper standard of law to the relevant facts, and the record supports the circuit court's decision that termination of the father's parental rights was in M.L.H.'s and J.L.H.'s best interests.