COURT OF APPEALS
DECISION
DATED AND FILED

March 13, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1824**

STATE OF WISCONSIN

Cir. Ct. No. 2023TP10

IN COURT OF APPEALS
DISTRICT II

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.A.C., A PERSON UNDER THE AGE OF 18:

KENOSHA COUNTY DIVISION OF CHILDREN AND FAMILY SERVICES,

PETITIONER-RESPONDENT,

V.

J.M.C., III,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Kenosha County: JODI L. MEIER, Judge. *Affirmed*.

¶1     GROGAN, J.[1]  JMC appeals from an order terminating his parental rights to his daughter, Janice.[2]  JMC raises two issues on appeal.  First, he claims the circuit court erroneously exercised its discretion when it denied his request for a new lawyer.  Second, he asserts that the circuit court failed to take testimony as required by WIS. STAT. § 48.422(3) when he pled no contest at the grounds hearing and that this error was prejudicial.  This court affirms.

## I.  BACKGROUND

¶2     Janice was born in July 2020 to an unwed mother.  In November 2020, the circuit court found Janice to be a child in need of protection or services (CHIPS).  Although Janice was returned to her mother's home in late 2020, she was permanently removed in January 2021 and placed in foster care.  JMC was adjudicated Janice's father in January 2021.

¶3     Termination of parental rights (TPR) notices were attached to the dispositional, change of placement, revision, and permanency hearing orders, and the orders entered after the paternity adjudication were provided to JMC.  Neither parent satisfied the conditions required to end the CHIPS order, and in January 2023, the Kenosha County Division of Children and Family Services (County) filed a Petition seeking to terminate parental rights (Petition).  This appeal involves only JMC.  Grounds alleged to terminate JMC's parental rights were: (1) abandonment (WIS. STAT. § 48.415(1)(a)2 and 3); (2) failure to assume

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] This court uses a pseudonym for the child for confidentiality purposes.  *See* WIS. STAT. RULE 809.81(8).

parental responsibility (§ 48.415(6)); and (3) continuing CHIPS (§ 48.415(2)). JMC contested the Petition, and the State Public Defender appointed a lawyer to represent him.

¶4     It is undisputed that Janice never lived with JMC as he has been incarcerated during much of her life—first from February 2021 through October 2022 and then again from January 2023 through at least the time of this appeal.  It is also undisputed that during the few months JMC was released on extended supervision, he had six or seven supervised visits with Janice in November and December 2022.

¶5     JMC's adjourned initial appearance occurred on March 31, 2023.  At that hearing, with JMC present, the County asked the circuit court to take judicial notice of the certified CHIPS records and all the applicable orders in the case.  The County listed the orders and indicated that each of the substantive orders included the required TPR warnings.  The court took judicial notice of the orders and confirmed the orders gave the required TPR warnings.  JMC did not object. Janice's mother failed to appear at the hearing, and the court therefore heard testimony from Alesha Brereton—the County's case manager handling Janice's case—to establish grounds existed with respect to Janice's mother.  Her testimony confirmed that Janice had been placed outside of the parental home pursuant to a court order since January 2021.

¶6     The circuit court held a final jury status conference for JMC's grounds hearing on May 18, 2023.  At that conference, JMC's lawyer argued pretrial motions and addressed jury instructions.  At no time during that conference did JMC express concerns about or problems with his lawyer's representation.  A few days later, on May 22, 2023, all parties returned to court for

the factfinding jury trial to determine whether grounds existed to terminate JMC's parental rights. Before the jury was brought in, however, JMC's lawyer advised the circuit court that JMC "no longer wishes to have me represent him" and that he wanted a different lawyer.[3] After confirming with JMC that he wanted a new lawyer, the circuit court asked for the County and guardian ad litem's (GAL) positions.

¶7     The County asked the circuit court to deny the motion, noting the request was coming on the day of trial and that JMC had a history of requesting new counsel on the day of trial as a delay tactic in other cases. The GAL indicated it took no position but noted "this is the day for trial and it does serve the child[]'s best interests that this be done expeditiously." The court denied JMC's request for a new lawyer because he provided no reason and noted that at the jury status conference just a few days earlier, JMC had no issue with his current lawyer.

¶8     As the circuit court moved on to address jury selection, JMC interjected: "Do I have to be here? Because evidently y'all already done made y'all decision on what y'all gonna do. I don't even have no rights. Everything I ask for get denied."

¶9     The circuit court then allowed JMC to explain why he requested different counsel. JMC stated he thought his current lawyer was ineffective—seemingly in reference to the court's denial of his motion seeking an impossibility

---

[3] The transcript from that hearing reflects that there was a discussion about JMC's wish to hire new counsel that initially occurred off the record. Specifically, JMC's counsel stated that he had "mentioned before off the record" but wanted "to put on the record [JMC] has indicated at this time he no longer wishes to have me represent him." There is no indication, however, as to whether any additional information related to JMC's request was discussed off the record.

instruction at the final jury status conference a few days prior—and that he had just realized it "last week[,]" and he continued with comments about his criminal matters, including comments about a search warrant, failure to get discovery, wanting to file a motion to suppress, and being put in prison. JMC believed that based on all of this, he should ask for new counsel in the TPR proceeding. JMC continued to assert to the court that it was the County's negligence that put him in this position, that the County made false allegations against him, and that the County failed to do its job. At the end of his remarks, JMC said: "That's all I wanted to say, Your Honor. I'm all right now."

¶10    After the circuit court said, "Okay. That's okay[,]" JMC told the court that his cases were on appeal and asked the court to put the factfinding trial on hold until his appeals were decided. The court indicated it would not put the factfinding trial on hold for JMC's appeals, that it had not predetermined the matter, and that it is the jury that would decide whether grounds existed to terminate JMC's parental rights. The court then answered JMC's question about whether he needed to stay for the factfinding trial:

> If you -- I'm not -- am I gonna chain you down? I know you're in custody so when you're transported you are cuffed and whatnot, but I'm not gonna chain you to the floor. If you don't want to be here then I will find you in default because you do have to appear, period.
>
>    So unless you want to do a voluntary consent. Unless you want to do a no contest to this phase. You can do that if you want, but yeah. You do need to be present at all court hearings or you will be found in default. Did you want an opportunity?

¶11    JMC's counsel then interjected and asked for an opportunity to talk to JMC, at which point the circuit court took a recess for thirty-six minutes so they could confer. When court resumed, JMC decided to enter a no contest plea to the

abandonment allegation and to forgo the factfinding trial, and he signed a plea questionnaire and waiver of rights form to that effect. In that plea questionnaire, JMC agreed "that there are enough facts in the petition for the jury/court to find that there are grounds to terminate my parental rights to the above named child, and I do not object to the judge doing so." The circuit court had JMC sworn in and conducted a lengthy plea colloquy during which it confirmed JMC had read the plea questionnaire/waiver of rights form, understood it, and signed it.

¶12    The circuit court's plea colloquy included, as relevant to JMC's appeal, the following exchange:

> THE COURT: And as I've stated just a few minutes ago and you confirmed that it is your decision to enter a no contest plea only to grounds in the ground of three-month abandonment in this first phase of the termination of parental rights trial; is that correct?
>
> [JMC]: Yes.
>
> THE COURT: Did you discuss that decision with your attorney?
>
> [JMC]: Yes.
>
> THE COURT: Did you need any more time to discuss your decision with your attorney?
>
> [JMC]: No.
>
> ….
>
> THE COURT: Do you understand that by entering a no contest plea to grounds you are only conceding that there is clear, convincing and satisfactory evidence as to the grounds alleged by the State, but you're as it relates to the three-month abandonment ground because that's the one you're pleading to? Not the other ones.
>
> [JMC]: Yes.
>
> ….

> THE COURT: *Are you satisfied with your attorney and the representation that your attorney has provided to you to date?*
>
> [JMC]: *Yes.*

(Emphases added.)

¶13     At the conclusion of the colloquy, the circuit court accepted JMC's no contest plea and found:

> that his waiver and no contest plea is being made freely, voluntarily, intelligently and with full understanding of the nature of the proceedings; the potential consequences of his decision and all the rights that he has and is giving up by entering a no contest plea. The Court does accept his waiver and his no contest plea to the three-month abandonment ground.
>
> The Court finds that there's a factual basis for the allegation in the petition and based upon [JMC]'s waiver of right to contest the three-month abandonment ground in the petition I've accepted that and based on the entry of [JMC]'s no contest plea to the three-month abandonment ground which the Court has accepted the Court does now find that the grounds for termination of parental rights as it relates again to the three-month abandonment ground have been proven by clear, convincing and satisfactory evidence.
>
> And based on the finding of grounds I am mandated to find that [JMC] is unfit.

¶14     The circuit court set the dispositional hearing for June 21, 2023. However, on that date, JMC's lawyer requested an adjournment due to the fact that JMC's incarceration out of town prevented them from being able to prepare. The court adjourned the dispositional hearing until June 29, 2023. At the June 29th hearing, only Brereton, the County's case manager, testified. Brereton testified that she prepared a dispositional report for the court on June 12, 2023, and asked that the report be incorporated into her testimony. As material here, Brereton testified:

7

- Janice was removed from her mother's home in January 2021 and placed in foster care;

- JMC's last contact with Janice was in December 2022, and he had not had regular contact with the foster parents or the County since January 2021;

- JMC sent letters to Brereton expressing that he loved and missed Janice;

- Brereton provided JMC with envelopes so he could mail letters to Janice through Brereton, but JMC failed to write any letters to Janice;

- Janice never lived with JMC;

¶15    When asked, Brereton also confirmed that she was incorporating into her "testimony the contents of the court report that [she] filed regarding this case[.]"  That report primarily addressed the history of Janice's removal from her mother's home and her parents' respective histories, cooperation with the County, and failure to comply with the conditions of return.

¶16    In addition to her testimony and the incorporated report, Brereton had also previously signed and filed an affidavit that was attached to the Petition. That affidavit included, as relevant here, the following:  (1) pursuant to a court order, Janice "was placed outside the home of a parent … since January 22, 2021, a period of longer than six months"; (2) "[t]he court's dispositional, change of placement, revision, and permanency hearing orders have been reduced to writing, and all include written termination of parental rights warnings, pursuant to [WIS. STAT. § ]48.356(2)"; (3) copies of these orders and the "written termination of parental rights warnings[] were provided to the parents"; (4) JMC "received verbal termination of parental rights warnings" when he appeared in court "on January 22, 2021, July 6, 2021, February 4, 2022, and July 8, 2022"; and (5) JMC

abandoned Janice under WIS. STAT. § 48.415(1)(a)2 because he failed to visit or communicate with her for "a period of longer than three months."

¶17 JMC did not testify at the dispositional hearing; however, after his lawyer made arguments on his behalf, JMC read a statement in which he blamed the County for not alerting him when Janice was removed from her mother's home or about Janice's hospitalization, and he also said that while the County worked hard to try to help Janice's mother, it did nothing to help him. He further stated that when he was released from prison, he made efforts to have contact with Janice.

¶18 The circuit court found it was in Janice's best interests to terminate JMC's rights. It acknowledged that although JMC expressed love for Janice and attempted visits with her during the short time he was on extended supervision, JMC nevertheless returned to prison. The court agreed with JMC that his incarceration impacted his ability to actively parent Janice, particularly because he had been incarcerated for most of her life, but then observed that it was ultimately JMC's choices that created those circumstances. The court entered the TPR order, and JMC appealed.

¶19 After filing his appeal, however, JMC filed a motion to remand to the circuit court, which this court granted. Upon remand, JMC filed a postdisposition motion seeking withdrawal of his no contest plea on the ground that the circuit court accepted his no contest plea without taking testimony to support the allegations in the Petition as required by WIS. STAT. § 48.422(3). JMC also sought to have the TPR order vacated. The postdisposition motion did not challenge the circuit court's denial of his request for a new lawyer.

¶20 The postdisposition court held a hearing on JMC's postdisposition motion in November 2023. No witnesses testified—the court simply heard argument from both sides. JMC's lawyer argued only that the circuit court violated WIS. STAT. § 48.422(3) by not taking testimony at the time of JMC's no contest plea, whereas the County, which seemingly agreed that the circuit court had erred, argued there was nevertheless sufficient evidence in the Record as a whole that supported the abandonment allegation. The County contended that JMC was not prejudiced despite the error.

¶21 The postdisposition court agreed with the County. It admitted it had erred in failing to take testimony at the time of JMC's plea as required by WIS. STAT. § 48.422(3) but found that JMC was not prejudiced because there was sufficient evidence in the entire Record to prove abandonment grounds. Relying on *Waukesha County v. Steven H.*, 2000 WI 28, 233 Wis. 2d 344, 607 N.W.2d 607, it held that because the factual basis to support the abandonment grounds alleged in the Petition could "be teased out of the testimony of other witnesses at other hearings when the entire record is examined[,]" its error did not cause prejudice. (Quoting *id.*, ¶58.)

¶22 In explaining why its error was not prejudicial, the postdisposition court addressed both elements needed to establish abandonment in the context of the Record as a whole. With respect to the first element—whether the child was placed outside the parental home pursuant to a court order that contained the termination of parental rights notice required by law—the court concluded "that information is easily ascertainable by the review of the entire termination of parental rights file." It explained that at the March 31, 2023 hearing, it "took judicial notice of documents, certified documents, that were tendered by the [County]. Specifically the dispositional order in the underlying CHIPS matter.

Also, an order for a change of placement with [TPR] notice. An in home to out of home placement filed January 22nd of 2021." The court then went through each of the orders and explained that each placed Janice outside of the parental home and included the proper TPR notices. Thus, it concluded that the first element of the abandonment ground had been proven.

¶23    With respect to the second element—whether JMC failed to communicate or visit with Janice for a period of three months or longer—the postdisposition court found Brereton's testimony at the dispositional hearing provided sufficient proof. The court noted Brereton testified that there was a period of twenty months (February 6, 2021, to October 11, 2022) when JMC failed to visit with or communicate with Janice. The court also observed that JMC did not challenge Brereton's testimony, the contents of her report, or the incorporation of her report into her verbal testimony.

¶24    Accordingly, the postdisposition court denied JMC's postdisposition motion on the basis that its failure to take the statutorily required testimony at the time of JMC's no contest plea did not cause prejudice because "facts supporting the allegation in the petition to which [JMC] entered his no contest plea, the underlying facts … are clear from the entire record and witness testimony at other hearings."

¶25    JMC appeals.

## II. DISCUSSION

¶26    JMC makes two arguments on appeal: (1) the circuit court erred in denying his request to fire his lawyer on the day of the factfinding trial; and (2) the

11

circuit court erred in failing to take testimony required by statute at the time he pled no contest to abandonment, which prejudiced him.

### A. Request for a new lawyer

¶27 JMC believes the circuit court erroneously exercised its discretion in denying his request for a new lawyer. Whether to grant a litigant's request for new counsel is discretionary, and on appeal, this court must therefore determine whether the circuit court's denial was an erroneous exercise of its discretion. *See* ***State v. Lomax***, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988). In reviewing the circuit court's decision, appellate courts are to "consider a number of factors including" "the adequacy of the court's inquiry," "the timeliness" of the request, and "whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated fair representation of the case." ***Id.*** at 359.

¶28 Here, JMC contends the circuit court erroneously exercised its discretion primarily because it failed to make a "full inquiry into [his] reasons for requesting a change of counsel." *See* ***id.*** at 361. JMC concedes that the timing of his request made on the day the grounds trial was set to begin was not ideal but argues there are circumstances when such timing is necessary.

¶29 As noted above, ***Lomax*** requires that this court consider three specific factors in reviewing the circuit court's denial; however, in identifying those three factors, the ***Lomax*** court indicated that these three specific factors were among "a number of factors" to be considered. *See* ***id.*** Having reviewed the Record, this court cannot conclude, based on ***Lomax*** and the totality of the circumstances, that the circuit court erroneously exercised its discretion in denying JMC's request.

¶30     Here, it is clear that the adequacy of the circuit court's inquiry into JMC's request was insufficient under the first ***Lomax*** factor as the circuit court did nothing more than ask JMC to confirm that he wanted a new lawyer prior to denying the request. However, shortly thereafter, the circuit court, in response to JMC's frustration, allowed JMC an opportunity to voice his concerns and frustrations with limited interruption before maintaining the denial of his request. When JMC concluded his statement—much of which related to his overall frustration with the TPR process rather than actual frustration with his lawyer—he told the court "[t]hat's all I wanted to say, Your Honor. I'm all right now." That JMC was primarily frustrated with the process rather than his lawyer was confirmed later in the very same hearing when JMC confirmed, in response to the court's question as to whether he was "satisfied with [his] attorney and the representation that [his] attorney has provided [him] to date[,]" that he was. Thus, although the circuit court failed to engage directly with JMC as to why he had requested a new lawyer, JMC himself confirmed during the same hearing that he was satisfied with his lawyer despite the request. This supports the conclusion that the circuit court's discretion was not erroneously exercised.

¶31     Further supporting that conclusion is the second ***Lomax*** factor—the timing of JMC's request, which occurred on the morning of the grounds trial just before the circuit court sought to have the jury brought up. While there may be circumstances in which such a request is timely, there is simply nothing in the Record that would support that conclusion here. To the contrary, the Record indicates that JMC has made similar last-minute requests for a new lawyer in other proceedings. While having made similar last-minute requests in other cases is not dispositive, this history of similar requests weighs against JMC where, as here, JMC failed to explain why he waited to make his request until the jury trial was

about to begin—particularly since, as the circuit court noted, JMC had just appeared in the courtroom with counsel a few days earlier.

¶32     As to the third ***Lomax*** factor, JMC did not identify a specific conflict with his lawyer, let alone suggest such conflict "was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case." *See **id.***, 146 Wis. 2d at 359. And, in any event, JMC's conduct during the course of the same hearing suggested no conflict existed. For example, shortly after JMC's lengthy statement to the circuit court, JMC and his lawyer met for over thirty minutes to discuss whether JMC wished to proceed with the jury trial or to enter a plea to grounds, and at no point thereafter did JMC indicate that he had any inability to communicate with his lawyer. In fact, it was after that conversation that JMC confirmed that he *was* satisfied with his lawyer's representation.

¶33     In addition to the three ***Lomax*** factors—which again are only among "a number of factors" to be considered on appeal—this court notes that JMC, despite having been granted a remand from this court to raise postdispositional arguments, did not raise this issue in his postdispositional motion or at the postdispositional hearing itself. As the ***Lomax*** court noted, even if a circuit court erroneously exercised its discretion in denying a litigant's request for a new lawyer, the appropriate remedy is not outright reversal but rather the opportunity to be heard at a "retrospective hearing" to allow the circuit court to determine, after the fact, whether there were sufficient reasons to deny the request. ***Lomax***, 146 Wis. 2d at 357-58. Here, JMC had the opportunity to raise this issue with the circuit court—presided over by the same judge who denied his request for a new lawyer—but failed to do so.

¶34   In summary, while it is clear that the circuit court could have—*should have*—done more to engage directly with JMC rather than simply allowing him an opportunity to engage in a monologue, this court cannot conclude, based on the totality of the circumstances reflected in the Record, that the circuit court erroneously exercised its discretion in denying JMC's request, particularly in light of JMC's confirmation that he actually *was* satisfied with his lawyer's representation shortly after the court had denied his request.

### B.  Failure to take testimony at time of no contest plea and prejudice

¶35   JMC also contends the circuit court erred when it failed to take testimony at the time of his no contest plea and argues this error prejudiced him. JMC is correct that the circuit court erred when it failed to take testimony at the time of his no contest plea. WISCONSIN STAT. § 48.422(3) provides that "[i]f the petition is not contested the court shall hear testimony in support of the allegations in the petition, including testimony as required in sub. (7)."  It is undisputed here that the circuit court erred in failing to do so, and the circuit court itself conceded the error.

¶36   Our supreme court, however, has held that this error is harmless when the statutorily required testimony may be "teased out" from other parts of the Record.  **Steven H.**, 233 Wis. 2d 344, ¶58.  Whether the circuit court's error was harmless presents a question of law this court reviews de novo, *see* **State v. Jackson**, 2014 WI 4, ¶44, 352 Wis. 2d 249, 841 N.W.2d 791, and in determining whether JMC was prejudiced, this court is to review the entire Record and the totality of the circumstances.  *See* **Steven H.**, 233 Wis. 2d 344, ¶4.

¶37   As the facts set forth above establish, a review of the entire Record demonstrates that JMC was not prejudiced because a factual basis supporting the

conclusion that JMC abandoned Janice can be located "when the entire record is examined." *See id.*, ¶58.

¶38    As the postdisposition court aptly explained in its ruling, both elements establishing abandonment grounds are contained in the Record.  In regard to the first element, at the March 31, 2023 hearing, the circuit court took judicial notice of the court orders placing Janice outside of the parental home, each of which it confirmed had the TPR warnings attached.  JMC nevertheless argues that the circuit court having done so was insufficient to establish the first element because the allegation was not established by "testimony."  In that regard, JMC argues *Steven H.* held that orders with attached warnings cannot be established by taking judicial notice and that Brereton's report does not assert that "the order placing [Janice] outside the home contained the requisite termination of parental rights notice."  This court rejects JMC's arguments.

¶39    To the extent JMC suggests the circuit court's having taken judicial notice of the multiple orders it issued during the pendency of this matter was insufficient to establish the first element of the abandonment claim—that Janice had "been placed, or continued in a placement, outside the parent's home *by a court order containing the*" *required TPR warnings*—this court disagrees.  *See* WIS. STAT. § 48.415(1)(a)2 (emphasis added).  While JMC is correct that the *Steven H.* court confirmed "that the legislature intended the circuit court to hear testimony in support of the allegations," the *Steven H.* court, after "examination of *the entire record*," was nevertheless "persuade[d] … that there [were] insufficient grounds to justify … overturning the circuit court's judgment" despite the circuit court having failed to take testimony at the time of the no-contest plea.  233 Wis. 2d 344, ¶¶56, 60 (emphasis added).

¶40 Here, support for the factual allegation that Janice had been placed outside of her parents' home pursuant to a court order that contained the TPR warning is found in the circuit court's own orders, and it would be illogical to conclude that the circuit court could not look to *its own orders* to support this allegation but would instead be required to rely specifically on witness testimony that the circuit court itself had issued such orders. Additionally, **Steven H.** addressed whether the circuit court could take judicial notice of a TPR report—*not* whether the court could take judicial notice of its *own* orders, which are certified records not subject to reasonable dispute. *See id.*, ¶53; WIS. STAT. § 902.02(2). Thus, the circuit court could take judicial notice of the orders, and it was acceptable for the circuit court to rely on those to establish the first element required for abandonment.[4]

¶41 In addition to the circuit court having taken judicial notice of its own orders, Brereton's testimony at the adjourned initial appearance on March 31, 2023—although taken in the context of grounds as to Janice's mother— acknowledged a January 2021 revision to the dispositional order placing Janice outside of a parent's home. And, although Brereton did not specifically testify at the dispositional hearing that Janice had been removed from her parents' home pursuant to a court order with the required TPR warnings, she again referenced Janice's January 2021 removal from her mother's home pursuant to a CHIPS order

---

[4] Additionally, Brereton's affidavit attached to the Petition states that Janice was removed from the parental home pursuant to a court order with the required TPR warnings, that JMC received copies of those orders, and that JMC received both written and verbal notice of the TPR warnings. While this information was included in Brereton's affidavit rather than in her testimony or the incorporated report, it is nevertheless part of the Record to which this court can look to support the allegations in the Petition. *See* **Waukesha County v. Steven H.**, 2000 WI 28, ¶¶58, 60, 233 Wis. 2d 344, 607 N.W.2d 607.

and Janice's placement in foster care since that time. While this testimony does not specifically reference the TPR warnings and directly mentions only the January 2021 order, it nevertheless supports the allegation that Janice had been removed from the parental home and that placement outside of the parental home continued—particularly when viewed in light of the Record as a whole.

¶42 As to the second element—that JMC did not visit or communicate with Janice for three months or longer—Brereton's testimony at the dispositional hearing clearly addressed this allegation. Specifically, Brereton testified at the June 2023 dispositional hearing that since January 2021, when Janice was removed from her mother's home, JMC had seen Janice six or seven times—all of which occurred between October 2022 and December 2022—and that JMC had otherwise not maintained regular contact with the County or the foster parents. Brereton's report, which she incorporated into her dispositional hearing testimony, further stated that during his incarceration—first from January 6, 2021, through October 11, 2023, and then from January 6, 2023, through at least the date of her report (June 12, 2023)—JMC "did not write letters to [Janice]" and only inconsistently wrote "to the assigned DCFS worker expressing that he loved and missed [Janice]."

¶43 Accordingly, although the circuit court erred when it failed to take testimony at the time it accepted JMC's no contest plea, a review of the entire Record confirms that a factual basis for the abandonment "allegations in the petition can be teased out of the testimony of other witnesses at other hearings

when the entire record is examined." *See Steven H.*, 233 Wis. 2d 344, ¶58. This court agrees that JMC was not prejudiced by the circuit court's error.[5]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] In a further attempt to establish prejudice by distinguishing his case from *Steven H.*, JMC also asserts he, unlike the parent in *Steven H.*, raised a substantive defense to the alleged ground for termination at the dispositional hearing. *See Steven H.*, 233 Wis. 2d 344, ¶59. According to JMC, his statements at the end of the dispositional hearing—which again, were not testimony—that "[t]here's no threat[,]" "[t]here's no abandonment[,]" and there is "no true and just reason for termination of my parental rights" raise a substantive defense to the abandonment ground. This court is not persuaded. JMC entered a plea at the grounds phase and he did not testify at the dispositional phase. His unsworn, conclusory statements do not somehow negate the evidence that JMC abandoned Janice and the circuit court's determination that it was in Janice's best interest to terminate his parental rights.