COURT OF APPEALS
DECISION
DATED AND FILED

May 8, 2024

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.    **2023AP1305**
                **2023AP1307**
                **2023AP1308**

Cir. Ct. Nos.  **2022TP6**
                **2022TP5**
                **2022TP4**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

NO. 2023AP1305

IN RE THE TERMINATION OF PARENTAL RIGHTS TO Z.G.O.,
A PERSON UNDER THE AGE OF 18:

KENOSHA COUNTY DIVISION OF CHILDREN AND FAMILY
SERVICES,

    PETITIONER-RESPONDENT,

  V.

A.G.O.,

    RESPONDENT-APPELLANT.

---

NO. 2023AP1307

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.G.O.,
A PERSON UNDER THE AGE OF 18:

KENOSHA COUNTY DIVISION OF CHILDREN AND FAMILY
SERVICES,

**PETITIONER-RESPONDENT,**

**V.**

**A.G.O.,**

**RESPONDENT-APPELLANT.**

---

**NO. 2023AP1308**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.G.O., A PERSON UNDER THE AGE OF 18:**

**KENOSHA COUNTY DIVISION OF CHILDREN AND FAMILY SERVICES,**

**PETITIONER-RESPONDENT,**

**V.**

**A.G.O.,**

**RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Kenosha County: CHAD G. KERKMAN, Judge. *Affirmed*.

¶1 NEUBAUER, J.[1] A.G.O., referred to herein by the pseudonym Adam, appeals from orders terminating his parental rights to three of his children,

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

J.G.O., M.G.O., and Z.G.O., referred to herein by the pseudonyms Jamie, Michael, and Zachary. Adam argues the circuit court erred in granting the Kenosha County Division of Children and Family Services (the County) summary judgment at the grounds phase based solely on requests for admission to which he failed to respond. Adam also argues that his trial counsel provided ineffective assistance by not responding to the requests for admission.

¶2 For the reasons set forth below, this court concludes that the circuit court did not err in granting the County summary judgment. Adam's failure to respond to the requests for admission conclusively established those admissions and, when considered with other evidentiary materials in the record, left no genuine issue as to any fact material to abandonment, one of the grounds for termination alleged by the County, and entitled the County to judgment as a matter of law. However, the circuit court correctly rejected Adam's ineffective assistance claim because he failed to show prejudice—that is, a reasonable probability that the circuit court would not have concluded that the County had proven abandonment by clear and convincing evidence if his counsel had denied the requests for admission relevant to that ground. Accordingly, the orders terminating Adam's parental rights are affirmed.

## BACKGROUND

### I. Termination Proceedings

¶3 Termination of parental rights proceedings involve two phases: the grounds phase and the dispositional phase. *See Sheboygan Cnty. Dep't of Health & Hum. Servs. v. Julie A.B.*, 2002 WI 95, ¶¶24-28, 255 Wis. 2d 170, 648 N.W.2d 402. In the grounds phase, the finder of fact must determine whether the

3

government establishes the ground or grounds it pleaded "for involuntary termination under WIS. STAT. § 48.415." *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854. If the fact finder determines that the government has established grounds to terminate under § 48.415, "the court shall find the parent unfit." WIS. STAT. § 48.424(4). The proceeding then enters the second, dispositional phase, during which "the court is called upon to decide whether it is in the best interest of the child that the parent's rights be permanently extinguished." *See Steven V. v. Kelley H.*, 2004 WI 47, ¶27, 271 Wis. 2d 1, 678 N.W.2d 856; *see also* WIS. STAT. § 48.426(2).

¶4 Jamie, Michael, and Zachary were removed from their parents' home in January 2019 after Adam allegedly "shot another individual in the family home while the children were present," the police found drugs, guns, and ammunition at the home, and "[t]wo of the children tested positive for cocaine." In June 2019, the children were found to be in need of protection or services under WIS. STAT. § 48.13(10). In July of that year, dispositional orders were entered placing the children outside their parents' home and imposing conditions the parents would have to meet before their children would be returned.

¶5 In January 2022, the County filed petitions to terminate the parental rights of Adam and the children's mother, referred to herein by the pseudonym Mary.[2] In the petitions, the County raised one ground to terminate Adam's parental rights—the children's continuing need of protection or services.

---

[2] In *Kenosha Cnty. Div. of Child. & Fam. Servs. v. M.A.M.*, Nos. 2023AP1643, 2023AP1644, & 2023AP1645, unpublished slip op. (WI App Apr. 24, 2024), this court affirmed the circuit court's orders terminating Mary's parental rights.

*See* WIS. STAT. § 48.415(2).  The County later filed amended petitions adding a second ground for termination—abandonment.  *See* § 48.415(1).

¶6    At a hearing on February 16, 2022, Adam, who has a hearing disability, informed the circuit court through an interpreter that he had retained an attorney to represent him.  However, because that attorney had not entered an appearance, the court directed Adam to contact the public defender's office about having counsel appointed to represent him.  At the end of February, the public defender's office appointed attorney Brenda VanCuick to represent Adam.  VanCuick and Adam appeared at a hearing on March 1, 2022, at which Adam denied the County's allegations and requested a jury trial.

¶7    On March 14, 2022, the County served sets of interrogatories and requests for admission pertaining to each of Adam's three children.  *See* WIS. STAT. § 48.293(4) (stating that "the discovery procedures permitted under [WIS. STAT.] ch. 804 shall apply in all proceedings under this chapter").  The requests for admission addressed various topics, including events in the years preceding the children being removed from Adam and Mary's home, the events and circumstances that led to the children's removal from the home, and facts relevant to the grounds for termination alleged by the County.

¶8    On April 14, 2022, VanCuick filed motions to extend the deadline to respond to the County's discovery.  In the motions, VanCuick stated that Adam's hearing disability made direct communication with him "very difficult" and that she had not been able to meet with him and an interpreter to discuss the discovery requests.  VanCuick requested an additional thirty days to provide responses.  The County filed a response stating that it did not oppose the requested thirty-day extension.

5

¶9 There is no indication in the record that the circuit court ruled on the extension motions, but it is undisputed that the County's discovery requests were never answered. On August 10, 2022, the County filed motions asking that the requests for admission be deemed admitted and that the court grant summary judgment as to the two grounds based on those admissions.

¶10 Two weeks later, on August 25, 2022, VanCuick moved to withdraw as Adam's counsel, asserting that Adam had recently "informed intake court (on a different case) that he would like for [her] to withdraw and would like new counsel appointed for all of his cases" and she had been unable to contact him "to confirm his wishes." That same day, the circuit court held a hearing at which Adam and VanCuick appeared. VanCuick told the court she had not been able to speak with Adam about the County's summary judgment motions and argued that under a local rule, the County had to confer with her regarding the requests for admission before it could seek to have them deemed admitted. VanCuick asked the court to deny the County's motions and address her request to withdraw.

¶11 The circuit court found that Adam had not answered the requests for admission despite the parties having agreed to extend the deadline by thirty days and deemed them admitted. The court asked the County if testimony on its summary judgment motions was needed, and the County's lawyer said no "based upon the certified records that are attached to the motion. But we certainly at disposition can shore up all of the grounds as well." The court determined that there was no genuine issue of material fact, granted summary judgment to the County, and denied VanCuick's request to withdraw.

¶12 The circuit court held a dispositional hearing in January 2023 at which Katherine Schroeder, the social worker assigned to the termination

proceedings, testified that Adam "ha[d] not had formal contact with his children since September 25, 2021." She said that she had not had more than sporadic communication with him since a phone call in December 2021, when he told her "to leave him alone and not bother him anymore." Schroeder also testified that Adam had not maintained contact with the children's foster parents or the children's doctors or school personnel. When asked what barriers existed to Adam's reunification with the children, Schroeder cited his past drug use, history of domestic violence towards Mary, and failure to take responsibility for the County's involvement with his children. Schroeder opined that the benefits of allowing the children to be adopted and achieve "a sense of permanency" would outweigh the harm they would experience if their parents' rights were terminated.

¶13 Adam testified that he had "[v]ery strong" relationships with his children but acknowledged that he "stopped visiting [them] maybe a year and a half ago. 15 or 16 months." After the County finished its cross-examination, Adam volunteered that he "stepped out because the more it went on, it was hurting the kids more than me. And so, that's why I stepped back. I knew if I kept going, it would hurt the kids more." In her closing argument, VanCuick stated that Adam had informed her that he was "fine" with having his rights terminated but not Mary's "because kids need their mommies." The circuit court found Schroeder's testimony credible and concluded that the factors relevant to termination weighed "overwhelmingly in favor of terminat[ing]" Adam's parental rights. After the court announced its decision, Adam stated that he "agree[d] you're right to stop the trauma. Stop the trauma for the kids."

7

## II.     Postdisposition Proceedings

¶14     Following the entry of orders terminating his parental rights, Adam, through new counsel, filed a postdisposition motion alleging that VanCuick had rendered ineffective assistance by, among other things, failing to deny some of the County's requests for admission.  The court held a two-day evidentiary hearing on Adam's motion (and a similar motion filed by Mary) at which VanCuick testified about her representation of Adam and her handling of the requests for admission.

¶15     In her testimony, VanCuick recalled receiving the requests for admission and interrogatories, giving copies to Adam, and "meeting with him in [her] office and going through a lot of those questions."  She acknowledged that she did not "file" answers to the requests for admission:  although she recalled doing so, nothing in her file showed that had occurred.  She denied any strategic motive for not answering them and described herself as "surprised" that she did not prepare answers given that she "[t]ypically" does not need client input to do so.

¶16     VanCuick explained that she initially had to communicate with Adam through his aunt on account of his hearing impairment but lost contact with him after he and his aunt had a falling out.  VanCuick had several phone numbers for Adam that were linked to an answering service, but the numbers were not "active."  She also was unable to communicate with Adam via email or U.S. mail because "he had some housing instability and so access to a computer or even at times a phone was difficult for him."  VanCuick testified that she was out of touch with Adam between May and mid-August of 2022.  She did not recall any attempts he made during that period to reach her.

¶17    VanCuick admitted that she should have denied the request that sought an admission that the County had made reasonable efforts to provide court-ordered services to Adam.  She was unable to recall the services Adam contended the County had not made reasonable efforts to provide but testified that the "issue … was going to be the [County's] efforts … to tailor their services to [Adam] based on … his hearing impairment [and] his other issues or disabilities."  She also acknowledged that she could have denied several requests relevant to the abandonment ground, which sought admissions that Adam lacked good cause for failing to visit his children or communicate with them, their foster parent, the County, or service providers for at least three months starting in September 2021.

¶18    The circuit court found that Adam was responsible for making sure VanCuick could contact him, that he "was unable to be reached" between May and August of 2022, and "that Attorney VanCuick made efforts to reach her client to no avail."  The court also stated that a client is ultimately responsible for answering requests for admission, not the attorney.  Based on these findings, the court concluded that VanCuick did not render deficient performance.  It also concluded that Adam had not shown "prejudice given [his] position at the disposition."

## DISCUSSION

### I.    The Circuit Court Properly Granted Summary Judgment to the County.

¶19    Adam first contends that the circuit court improperly granted summary judgment in the grounds phase based solely on the requests for admission.  This court reviews a circuit court's decision to grant summary

judgment de novo. *See* **State v. Bobby G.**, 2007 WI 77, ¶36, 301 Wis. 2d 531, 734 N.W.2d 81.

¶20     Adam acknowledges that WIS. STAT. § 48.293 permitted the County to serve requests for admission and that not answering the requests "conclusively established the admissions." *See* WIS. STAT. § 804.11(1)(b) ("The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or attorney …."); *see also* § 804.11(2) ("Any matter admitted under this section is conclusively established unless the court on motion permits withdrawal or amendment of the admission."). But, he argues, parents have a constitutional right not to have their rights terminated unless clear and convincing evidence establishes their unfitness. *See* **Santosky v. Kramer**, 455 U.S. 745, 769 (1982). He also cites our supreme court's acknowledgment in **Steven V.** that "summary judgment will ordinarily be inappropriate in TPR cases premised on … fact-intensive grounds for parental unfitness" like abandonment and a child's continuing need of protection or services. **Steven V.**, 271 Wis. 2d 1, ¶36. Given these considerations, he argues that the circuit court should not have granted summary judgment without first "*tak[ing] testimony sufficient to prove the grounds by clear and convincing evidence*."

¶21     In response, the County appears to concede that the circuit court was required to hear testimony as to the grounds for termination after it granted summary judgment under WIS. STAT. § 48.422(3) and **Waukesha County v. Steven H.**, 2000 WI 28, 233 Wis. 2d 344, 607 N.W.2d 607, *modified on other*

*grounds by* ***St. Croix Cnty. Dep't of Health & Hum. Servs. v. Michael D.***, 2016 WI 35, 368 Wis. 2d 170, 880 N.W.2d 107.  The County acknowledges that the court did not do so but argues that the error was harmless because testimony from Schroeder, the social worker assigned to Adam's children's cases, at the subsequent dispositional hearing and a report she prepared in advance of that hearing provided a sufficient factual basis to establish the grounds for termination.

¶22    This court disagrees with, and in any event is not bound by, the County's concession on the legal question of whether testimony was required before the circuit court could find Adam unfit.  *See* ***Cramer v. Eau Claire County***, 2013 WI App 67, ¶11, 348 Wis. 2d 154, 833 N.W.2d 172.  WISCONSIN STAT. § 48.422(3) requires "testimony in support of the allegations in the petition" where a parent does not contest the petition.  *See* ***Steven H.***, 233 Wis. 2d 344, ¶41 (noting that parent "entered a no-contest plea to the allegations in the petition to terminate his parental rights").  Here, Adam did not enter a no-contest plea; he contested the allegations by denying them and requesting a jury trial at the March 1, 2022 hearing.  Thus, § 48.422(3) did not apply.

¶23    In addition, in ***Steven V.***, our supreme court recognized that summary judgment "is just as appropriate in the unfitness phase of a TPR case where the facts are undisputed as it is in any other type of civil action or proceeding which carries the right to a jury trial" provided the circuit court acts "with due regard for the importance of the rights at stake and the applicable legal standards." ***Steven V.***, 271 Wis. 2d 1, ¶35.  In reaching this conclusion, the court specifically rejected an argument that "summary judgment on parental unfitness conflicts with the right to a jury trial at the fact-finding hearing" under WIS. STAT. § 48.422(3) and other statutory provisions.  ***Steven V.***, 271 Wis. 2d 1, ¶33.  "If a

motion for summary judgment is made and supported as prescribed by WIS. STAT. § 802.08," the court wrote, "the circuit court may properly conclude at the fact-finding hearing that there is no genuine issue of material fact in dispute and the moving party is entitled to partial summary judgment on parental unfitness as a matter of law." *Steven V.*, 271 Wis. 2d 1, ¶34.

¶24 To be sure, the *Steven V.* court did identify abandonment and continuing need of protection or services as grounds upon which summary judgment is "ordinarily" not appropriate because they are "fact-intensive." *Id.*, ¶36. However, the court also recognized that "[t]he propriety of summary judgment is determined case-by-case" and cautioned against construing its discussion as "a definitive statement about the propriety of summary judgment in any particular case." *Id.*, ¶37 n.4. Thus, the key question for the circuit court, and this court on appeal, is whether the County "establishe[d] that there is no genuine issue of material fact regarding the asserted grounds for unfitness under WIS. STAT. § 48.415, and, taking into consideration the heightened burden of proof specified in WIS. STAT. § 48.31(1) and required by due process, the moving party is entitled to judgment as a matter of law." *Steven V.*, 271 Wis. 2d 1, ¶53.

¶25 Here, with respect to abandonment, the County had to prove that Adam's children "ha[d] been placed, or continued in a placement, outside [his] home by a court order containing the notice required by [WIS. STAT. §] 48.356(2)" and that he "failed to visit or communicate with the child[ren] for a period of 3 months or longer." *See* WIS. STAT. § 48.415(1)(a)2. The record before the circuit court on summary judgment established both elements beyond genuine dispute. Affidavits from Schroeder filed in support of the termination petitions stated that dispositional orders were entered placing Jamie, Michael, and Zachary outside

their parents' home and that the orders "include written termination of parental rights warnings, pursuant to [§] 48.356(2)." In addition, Adam was deemed to have admitted that (1) he knew where his children had been placed; (2) he "could have discovered [their] whereabouts"; and (3) he had neither visited nor communicated with his children "for a period of three (3) months or longer beginning September 25, 2021."[3]

¶26 Adam raises several arguments as to why the circuit court had to take testimony before granting summary judgment to the County, but none is persuasive. First, Adam describes summary judgment based on unanswered requests for admission as "essentially sanctioning a party for failing to cooperate with discovery" and analogizes it to "ask[ing] that the court finds grounds based on a parent's failure to obey pretrial orders." He then cites ***Evelyn C.R. v. Tykila S.***, 2001 WI 110, ¶¶8-9, 16, 246 Wis. 2d 1, 629 N.W.2d 768, in which our supreme court concluded that a circuit court had erred in entering a default judgment against a parent on the issue of abandonment after the parent failed to appear personally at several hearings and without first taking evidence to establish abandonment. ***Evelyn C.R.*** does not provide a basis for relief here. Failing to timely answer requests for admission creates "conclusively established" admissions that may—and here did—furnish an evidentiary basis upon which to grant summary judgment. *See* WIS. STAT. § 802.08(2) (stating that summary judgment may be rendered based on "admissions on file"); WIS. STAT.

---

[3] Though the County pleaded two grounds for termination against Adam, it was required to prove only one. *See* WIS. STAT. § 48.415 ("Grounds for termination of parental rights shall be one of the following …."). Because this court concludes that the record before the circuit court was sufficient to grant summary judgment to the County as to abandonment, it need not address the other ground pleaded by the County, the children's continuing need of protection or services.

13

§ 804.11(2). By contrast, as the *Evelyn C.R.* court recognized, entering a default judgment as a sanction for failing to appear at a hearing does not create a similar evidentiary record that is constitutionally and statutorily required in termination proceedings. *Evelyn C.R.*, 246 Wis. 2d 1, ¶¶24, 26.

¶27 Anticipating the County's harmless error argument, Adam next argues that the record, including the testimony and other evidence presented at the dispositional hearing, failed to establish either ground for termination by clear and convincing evidence. As to the abandonment ground, Adam contends that he raised a "good cause" defense at the dispositional hearing when he testified that he "stepped back" from visiting his children because they "were struggling with his visits." *See* WIS. STAT. § 48.415(1)(c).

¶28 Our supreme court has found circuit court failures to take evidence before finding grounds for termination to be harmless error where sufficient evidence to support the grounds is present elsewhere in the record. *See, e.g.*, *Steven H.*, 233 Wis. 2d 344, ¶58 (declining to reverse termination order despite circuit court's failure to take evidence to establish grounds for termination because "[a] factual basis for several of the allegations in the petition can be teased out of the testimony of other witnesses at other hearings when the entire record is examined"); *Evelyn C.R.*, 246 Wis. 2d 1, ¶¶32-35. Here, however, this court need not look for such evidence in the record or conduct a harmless error analysis because, as discussed above, Adam's admissions and the other evidence presented by the County in support of its summary judgment motions established the absence of any genuine issue of material fact as to abandonment and the County's entitlement to judgment as a matter of law by clear and convincing evidence.

14

## II. The Circuit Court Correctly Denied Adam's Postdisposition Motion Because Adam Did Not Prove that He Received Ineffective Assistance of Counsel.

¶29 Adam's second argument is that VanCuick's failure to answer the requests for admission constituted ineffective assistance. Parents in termination proceedings have the right to effective assistance of counsel. *A.S. v. State*, 168 Wis. 2d 995, 1004-05, 485 N.W.2d 52 (1992). Ineffective assistance claims are typically evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that test, Adam must establish that VanCuick's performance was deficient and that her deficient performance prejudiced him. *See id.* at 687. If this court concludes that Adam has not established one of these elements, it need not analyze the other. *See State v. Mayo*, 2007 WI 78, ¶61, 301 Wis. 2d 642, 734 N.W.2d 115 ("[W]e need not address both the performance and the prejudice elements, if the defendant cannot make a sufficient showing as to one or the other element.").

¶30 Ineffective assistance claims present mixed questions of law and fact. *State v. Jenkins*, 2014 WI 59, ¶38, 355 Wis. 2d 180, 848 N.W.2d 786. This court "uphold[s] the circuit court's findings of fact, including the circumstances of the case and the counsel's conduct and strategy, unless they are clearly erroneous." *Id.* Whether counsel's performance meets the legal standard for ineffective assistance is "a question of law that this court decides de novo." *State v. Domke*, 2011 WI 95, ¶33, 337 Wis. 2d 268, 805 N.W.2d 364.

¶31 Initially, Adam argues that he does not have to prove prejudice because VanCuick's failure to answer the requests for admission "resulted in fundamental unfairness"—that is, it "effectively left [him] without representation at a critical stage of the proceedings—discovery." *See Strickland*, 466 U.S. at 692

("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."). This court disagrees; Adam was not, in fact or effect, denied counsel during discovery. VanCuick testified that she provided him with copies of the County's discovery requests and met with him at her office to discuss them. VanCuick also filed a motion seeking additional time to respond to the discovery requests when she lost contact with Adam. Though she did not serve responses to the discovery requests, the steps she took to review the requests with him and seek additional time to respond show that Adam was not actually or constructively denied counsel altogether such that prejudice can be presumed.

¶32    Thus, Adam remains obligated to prove prejudice. To do so, he must show that VanCuick's "errors were so serious as to deprive [him] of a fair [proceeding] whose result is reliable." *See id.* at 687. Adam "must show that there is a reasonable probability that, but for [VanCuick]'s unprofessional errors, the result of the proceeding would have been different." *See id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.***

¶33    Adam has not shown that he was prejudiced by VanCuick's failure to prepare answers to the requests for admission because he has not demonstrated a reasonable probability that, absent this failure, the circuit court would not have found grounds to terminate his parental rights. At this point, it is important to recall that although the County alleged two grounds for termination, ultimately, it only had to prove one. Here, this court focuses on the abandonment ground. Even if VanCuick denied the requests for admission on the elements for abandonment, there is not a reasonable probability that the circuit court would not have

determined that the County had proven abandonment by clear and convincing evidence.

¶34    As discussed above, abandonment required the County to prove two things:  (1) Adam's children "ha[d] been placed, or continued in a placement, outside [his] home by a court order containing the notice required by [WIS. STAT. §] 48.356(2)"; and (2) Adam "failed to visit or communicate with the child[ren] for a period of 3 months or longer."  *See* WIS. STAT. § 48.415(1)(a)2. Adam does not argue that the County would not have been able to establish either element.[4]  Instead, he contends that he would have been able to prove good cause for not visiting or communicating with his children at a fact-finding hearing.  As support for this argument, Adam cites his hearing impairment as an impediment to communication and his testimony at the dispositional hearing that he "stepped out because the more it went on, it was hurting the kids more than me.  And so, that's why I stepped back.  I knew if I kept going, it would hurt the kids more."

¶35    WISCONSIN STAT. § 48.415(1)(c) "provides an affirmative defense to the abandonment ground if an individual can establish 'good cause' why he did not visit or have contact with [his children]."  ***State v. James P.***, 2005 WI 80, ¶46, 281 Wis. 2d 685, 698 N.W.2d 95.  Here, a good cause defense would have required Adam to prove "all of the following by a preponderance of the evidence":

- Adam "had good cause for having failed to visit with the child[ren]" for a period of three months or longer;

_____

[4] Adam acknowledged at the dispositional hearing that he had "stopped visiting [his children] maybe a year and a half ago.  15 or 16 months."

17

- Adam "had good cause for having failed to communicate with the child[ren]" during that time period; and

- Adam either (1) communicated about the children with the County or "with the person or persons who had physical custody of [them]" during that time period or (2) "had good cause for having failed to" do so.

*See* § 48.415(1)(c)1.-3.

¶36 Adam has not shown that he would have been able to establish this defense. To begin, his assertion at the dispositional hearing that he "stepped out" or "stepped back" because "it" was "hurting the kids" is too vague to be of any value. Adam volunteered this assertion after the County concluded its cross-examination and not in response to a question that might provide some context and illuminate its meaning. After Adam made the statement, VanCuick declined an invitation from the circuit court to ask follow-up questions. As a result, it is unclear what Adam meant when he said he "stepped back" or "stepped out" or what exactly was "hurting" his children.

¶37 Adam argues in his appellate brief that his testimony referred to stopping visits with his children because "he was told at a certain point that his visits were damaging" to them. Taking him at his word and assuming this would be sufficient to show good cause for not visiting his children, it still falls far short of what is needed to establish the good cause defense. The defense requires a showing of good cause for failing to visit *and* communicate; other than his hearing impairment, Adam has not pointed to any reason why he did not communicate with his children. While his hearing impairment may have precluded or hampered

18

communication by telephone, Adam has not shown why he could not have communicated with his children through letters or other means. In addition, Schroeder confirmed at the dispositional hearing that Adam had not maintained contact with her or the children's foster parent since the children were removed from his home. Adam points to no evidence he would have offered to dispute Schroeder's testimony or to show that he had good cause for failing to communicate with either her or the foster parent.

¶38 Absent such evidence, Adam cannot show a reasonable probability that had VanCuick denied the requests for admission relevant to abandonment and had the circuit court held a fact-finding hearing, it would not have concluded that the County had proven abandonment by clear and convincing evidence. Thus, Adam has not shown that VanCuick's failure to answer the requests for admission prejudiced him. That conclusion makes it unnecessary for this court to analyze the other prong of Adam's ineffective assistance claim—whether VanCuick's performance was deficient. The circuit court correctly denied Adam's motion for postdisposition relief.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)4.

19